ARMSTRONG, CATOR & CO. v. N. W. and L. C. BEST.

*Contract of Married Woman—Lex Loci Contractus—Private International Law.*

1. The common law disability of a married woman to make a contract obtains in this State, except in cases specially permitted by statute.

2. While it is generally settled that, if a contract is valid according to the laws of a State where it is made, it is valid everywhere in respect to matters bearing upon its execution, interpretation and validity, yet as to the capacity of the contracting party the law of the domicile prevails. Therefore, where a married woman, domiciled in this State, not being a free-trader and not having the written assent of her husband, made a contract in another State according to whose laws a *feme covert* can contract: *Held*, that such contract cannot be enforced in the Courts of this State.

CIVIL ACTION, heard before *Bryan, J.*, at January Term, 1892, of WAYNE Superior Court, upon the following agreed statement of facts:

"It is agreed that at the time the goods for the purchase-money of which this action is brought were bought the plaintiffs were merchants, doing business in the city of Baltimore, in the State of Maryland, and the defendant L. C. Best was carrying on the trade of milliner and merchant in the city of Goldsboro, State of North Carolina, in her own name, as a licensed trader; that said goods were ordered by the defendant L. C. Best of the plaintiffs, and they were shipped by the plaintiffs to her from their place of business in the city of Baltimore, and were to be paid for by defendant L. C. Best at the end of sixty days; that at that time, and since, the defendant was and is a citizen and resident of the State of North Carolina, and a married woman, living with her husband, the defendant N. W. Best. The goods have not been paid for, except the credits set out in the accounts filed, and those not paid for were worth

the agreed price of $212.43; that the defendant has never been a free-trader under the statutes of North Carolina, and her husband has never consented in writing to the orders of said goods and to the sale thereof."

Judgment was rendered for defendants, and plaintiffs appealed.

*Mr. W. C. Munroe,* for plaintiffs (appellants).
*Messrs. Allen & Dortch,* for defendants.

SHEPHERD, C. J.: If the contract, which is the subject of this action, was made in this State, it is well settled that it would be void by reason of the common law disability of the *feme* defendant to make any contract whatever upon which a personal judgment can be rendered against her, except in the cases provided by statute. *Pippen* v. *Wesson*, 74 N. C., 437; *Dougherty* v. *Sprinkle*, 88 N. C., 300; *Baker* v. *Garris*, 108 N. C., 218; *Flaum* v. *Wallace*, 103 N. C., 296; *Farthing* v. *Shields*, 106 N. C., 289.

The plaintiffs, however, insist that the contract was made in the city of Baltimore, Maryland, their place of business, where they accepted the proposal of the defendant by shipping the goods according to her order. In this they are correct, for if a contract is completed in another State "it makes no difference in principle whether the citizen of this State goes in person or sends an agent or writes a letter across the boundary line between the two States." *Milliken* v. *Pratt*, 125 Mass., 374. As was said by Lord Lyndhurst: "If I, residing in England, send down my agent to Scotland, and he makes contracts for me there, it is the same as if I myself went there and made them." *Pattison* v. *Mills*, 1 Dow. & Cl., 342. So if one in New York orders goods from Boston, "either by a carrier whom he points out or in the usual course of trade, this would be a completion, a making of the contract, and

it would be a Boston contract whether he gave no note or a note payable in Boston, or one without express place of payment." 2 Parsons' Con., 586.

The contract, then, being a Maryland contract, it is next insisted that it is one which a *feme covert* could have made in that State, and therefore enforceable in the Courts of North Carolina. We are by no means certain that the present contract is a valid one according to the laws of Maryland, as the statute of that State seems to recognize the legal capacity of a married woman only to the extent of contracting with reference to property acquired by her "skill, industry or personal labor." Assuming, however, that it is a valid contract in Maryland, we will proceed to the examination of the question whether it should be enforced by the Courts of this State.

It is well settled that the law of one State has *proprio vigore* no force or authority beyond the jurisdiction of its own Courts, and that whatever effect is given to it by the Courts of foreign countries or other States is the result of that international comity (more properly called private international law) which is the product of modern civilization. *Hornthall* v. *Burwell*, 109 N. C., 10. It is left to each State or nation to say how far it will recognize this comity and to what extent it will be permitted to control its own laws. It has, however, been very generally settled that all matters bearing upon the execution, the interpretation and the validity of a contract are to be determined by the law of the place where the contract is made, and if valid there it is valid everywhere. *Taylor* v. *Sharp*, 108 N. C., 377. An exception is maintained by some of the continental jurists as to the capacity of a contracting party, and they generally hold that the incapacity of the domicile attaches to and follows the person wherever he may go. We remarked in *Taylor* v. *Sharp, supra*, that this was not con-

sidered by Mr. Justice STORY (Conflict Laws, 103, 104) as the doctrine of the common law, and we also stated the conclusion of GRAY, C. J., in *Milliken* v. *Pratt, supra,* that the general current of the English and American authorities is in favor of holding that a contract, which by the law of the place is recognized as lawfully made by a capable person, is valid everywhere, although the person would not under the law of the domicile be deemed capable of making it. The proposition, though denied by Dr. Wharton as to infants and *femes covert* (Conflict of Laws, 112, 118), seems to be generally accepted in this country in so far as it relates to the enforcement of contracts in courts other than those of the domicile. If, for example, the plaintiffs were suing upon the present contract in the Courts of Maryland, the defendant could not, it is thought, avail herself of the incapacity of her domicile, but the *lex loci contractus* would prevail. But quite a different question is presented when the action is brought in the forum of the domicile. In such a case a very important qualification of private international law is to be considered, and this is that no State or nation will enforce a foreign law which is contrary to its fixed and settled policy. In *Bank of Augusta* v. *Earle,* 13 Peters, 519, Chief Justice TANEY, speaking for the Court, said: "The comity thus extended to other nations is no impeachment of sovereignty. It is the voluntary act of the nation by which it is offered, and is inadmissible when contrary to its policy or prejudicial to its interests." To the same effect is the language of STORY, that no State will enforce a foreign law if it be "repugnant to its policy or prejudicial to its interests." Conflict of Laws, 37. That this qualifying principle is applicable to cases like the present is manifest, not only by reason and necessity, but also by the decisions of other Courts. Even in *Milliken* v. *Pratt, supra,* in which the *lex loci contractus* is pushed to the extreme limit, it is

suggested that where the incapacity of a married woman is the settled policy of the State "for the protection of its own citizens, it could not be held by the Courts of that State to yield to the law of another State in which she might undertake to contract."

In *Robertson* v. *Queen*, 87 Tenn., 445, the contract was made by the *feme* defendant in Kentucky, where she resided and under whose laws she was capable of contracting. An action was brought in Tennessee, and the Court held, as we did in the similar cases of *Sharp* v. *Taylor*, *supra*, and *Wood* v. *Wheeler*, 111 N. C., 231, that the plaintiff was entitled to recover. The Court, however, said: "If this were a suit against a married woman, a citizen of this State, on a contract made out of the State, there would be much force in the insistance of the defendant."

In *Johnson* v. *Gawtry*, 11 Mo. App., 322, it was held that where a married woman, having a separate estate in land in Missouri, makes a contract in another State, her capacity to make the contract and its validity are to be determined by the law of Missouri, in a suit in a Missouri Court to enforce such contract.

In *Bank* v. *Williams*, 46 Miss., 618, the contract was made in Louisiana, where it would have been valid against the *feme* defendant. The suit was brought in Mississippi, the place of her domicile, and under whose laws the contract was void by reason of her coverture. The opinion of the Court is very elaborate, and, although the special character of the Louisiana law is referred to, it is believed that its reasoning is of general application. The Court said: "It is the prerogative of the sovereignty of every country to define the conditions of its members, not merely its resident inhabitants, but others temporarily there, as to capacity and incapacity. But capacity or incapacity, as to acts done in a foreign country where the person may be

temporarily, will be recognized as valid or not in the forum of his domicile, as they may infringe or not its interests, laws and policies." After speaking of the separate estate of the wife and the statutes prescribing how it may be charged, the Court, referring to the foreign plaintiff, says: "But he must satisfy the Court that his debt was such a charge upon her estate, or its income, as she had the power to make; otherwise, it would be a violation of the tenure, the conditions of her title, to allow him to subject it. But the creditor may say 'I cannot bring this debt within the terms defined by your law; nevertheless, it was such a contract as a married woman could make by the law of Louisiana. Comity requires your Courts to treat the contract precisely as Louisiana would, and I demand a judgment against the wife.' 'No,' says the Court, 'you cannot get here any fruit of a judgment; there is nothing subject to its payment, and our law affords no remedy against a married woman in any of its Courts, law or equity, except through a property which she has, and which must be pointed out by the creditor. We know of no such thing as a personal obligation, aside from and independent of a property which may discharge it.'"

In North Carolina it has been conclusively determined that the common law disability of a *feme covert* still obtains, and that, except in the cases provided by statute, her promise, as was said by RUFFIN, J., is "as void as it ever was, with no power in any Court to proceed to judgment against her *in personam.*" *Dougherty* v. *Sprinkle, supra.* The Constitution and laws made in pursuance thereof protect her separate estate and prescribe the manner in which she may dispose of or charge it, and the assent of the husband is generally necessary.

This brief reference to our laws in respect to married women is sufficient to show that the enforcement of the

present contract is wholly repugnant to our domestic policy, as well as prejudicial to the interests of our citizens. It is not pretended that the defendant has attempted to charge her separate estate in any manner provided by our laws, and to hold that she may subject it to execution upon a personal judgment, by reason of a promise made during a short visit to another State, or, as in this case, by a simple order for goods, would afford an easy method of charging her property in contravention of the public policy and laws of the domicile. It is further to be observed that in North Carolina, as a general rule, the written assent of the husband is necessary in order to give any effect whatever to her obligations, yet this wholesome provision may easily be evaded, even in the very presence of the husband and despite his protest, by a simple correspondence by the wife with parties in another State, which may technically amount to a foreign contract. In this way she could indirectly dispose of or charge all of her real or personal property, entirely freed from the restraint of her husband, or the methods prescribed by the *lex rei situs.* We cannot assent to the proposition that a foreign law, thus introduced and so utterly subversive of the laws regulating a large amount of property within the limits of this State, will be recognized and enforced by our Courts.

The Courts of our State have perfect jurisdiction over all personal and real property within its limits belonging to the wife, and if our laws in respect to the manner in which it may be charged conflict with those of another State, it cannot be made a question in our own Courts as to which shall prevail. It is certainly competent for any State to adopt laws to protect its own property as well as to regulate it, and "no nation," says STORY, "will suffer the laws of another to interfere with her own to the injury of her citizens. That whether they do or not must depend on the

condition of the country in which the foreign law is sought to be enforced, the particular nature of her legislation, her policy, and the character of her institutions. * * * That whenever a doubt does exist, the Court which decides will prefer the laws of its own country to that of the stranger." Conflict of Laws, 28.

For the reasons given, we cannot recognize the present contract as an enforceable one in our Courts.

We think his Honor was correct in his ruling that the plaintiffs were not entitled to recover.

Affirmed.