*FIRST NATIONAL BANK OF GENEVA, OHIO, *v.* SHAW

*et al.*

(*Knoxville.* September Term, 1902.)

1. **CONTRACTS. Notes—Construction of, Lex loci.**

The law of the place where the contract was consummated by delivery or otherwise governs in the construction of the contract and not the law of the place where it is signed or executed. (*Post, pp.* 240-241.)

Cases cited: Hubble *v.* Morristown Land Co., 95 Tenn., 585; Hall *v.* Cordell, 142 U. S., 116; Armstrong *v.* Best, 112 N. C., 59; Milliken *v.* Pratt, 125 Mass., 374.

2. **SAME. Same. Enforcement of, Lex fori.**

In an action to enforce a contract *lex fori* governs if repugnant to the *lex loci contractus*. (*Post, pp.* 243-244.)

Cases cited: Bank *v.* Walker, 15 Lea, 299; Pearl *v.* Hansborough, 9 Humph., 429; Milliken *v.* Pratt, 125 Mass., 374.

3. **MARRIED WOMEN. Contracts—Coverture a defense to.**

While the tendency of legislation in this State is to enlarge the contractual power of married women, yet it is well settled that their contracts are voidable and will be declared nugatory whenever the defense of coverture is interposed. (*Post, p.* 243.)

4. **SAME. Same. Case in judgment.**

A married woman residing with her husband in this State signed a note and by mail sent it to the payee bank in Ohio, where it was made payable; the acceptance and delivery were in the State of Ohio, by the laws of which married women

---

*For conflict of laws as to contracts of married women, see note to Union Nat. Bank *v.* Chapman (N. Y.), 57 L. R. A., 513.

First National Bank of Geneva, Ohio, v. Shaw.

are liable on their contracts. Suit by payee bank to collect note. Plea of coverture by married woman.

HELD: 1st. The note was an Ohio contract, valid and enforceable in that State. 2d. The plea of coverture is a defense in bar of an action to collect said note in this State.

### FROM RHEA.

Appeal from the Chancery Court of Rhea county. THOMAS M. MCCONNELL, Chancellor.

R. C. M. CUNNINGHAM, and CHAMBLISS & CHAMBLISS, for the Bank.

JOHN C. LOCK, for Shaw et als.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The only question presented for determination upon this record is the liability of the defendant Mrs. Stella V. Harley upon the following note:

"$500.00.   Geneva, Ohio, Dec. 3, 1892.   Six months after date, value received, we jointly and severally promise to pay to the First National Bank of Geneva, at their banking house, $500.00 interest eight per cent. after maturity.   Interest paid to maturity $17.-50.   D. H. Harley, Stella V. Harley, M. P. Shaw."

Mrs. Harley, in her answer to the bill, avers that she was a married woman at the time said note was executed, and relies on the plea of coverture.   She

further avers that she and her husband, D. H. Harley, were residents and living in the State of Tennessee at the time said note was executed, and had since continuously lived in this State, and she denies that the note was an Ohio contract.

The facts found by the court of chancery appeals are, viz.:  First.  The note sued on is a renewal note. The original note was made June 6,. 1891.  It was renewed December 5, 1891; renewed again January 4, 1892; and again December 3, 1892; the note last renewed or made being the one in suit.  Second.  Previous to the execution of the first note, and since 1889, Mrs. Harley was a married woman, living with her husband continuously in Tennessee.  She owned no property in the State of Ohio.  Third.  The weight of the proof is, and we so find as a fact, that she signed all the notes in Tennessee; and it is practically conceded, and, if not conceded, we find the fact to be, that she signed the note sued on in Tennessee.  Fourth. The original note was negotiated in Geneva, Ohio. The note sued on was received by the bank at Geneva, Ohio, through the mail, from Chattanooga, Tenn. Fifth.  It is conceded that, under the statute law of Ohio, married women are liable in that State on their contracts.

It will be perceived that the legal question presented is whether a married woman, domiciled with her husband in Tennessee, is liable on a note signed by her in this State, but payable in the State of Ohio.  The

first question, of course, to be determined, is whether, upon the facts found, this is a Tennessee or an Ohio contract. Says Mr. Tiedeman, in his work on Commercial Paper (page 506) : "It is not the law of the place where the contract was signed or executed, but the law of the place where the contract was consummated, by delivery or otherwise, which governs the construction of the contract made in one State, to be performed in another. Thus notes drawn in one State, and delivered and payable in another, for purchases made there, are governed by the law of the latter State, and are considered there made; for by delivery, only, the act of making is fully consummated." So it was said in *Hall* v. *Cordell,* 142 U. S., 116 (12 Sup. Ct., 154, 35 L. Ed., 956) : "But where there is nothing to show that the parties had in view, in respect to the execution of the contract, any other law than the law of the place of performance, that law must determine the rights of the parties." *Hubble* v. *Morristown Land Co.,* 95 Tenn., 585 (32 S. W., 965). In 2 Pars. Cont., 586, it is said: "So if one in New York orders goods from Boston, either by carrier whom he points out, or in the usual course of trade, this would be a completion in the making of the contract, and it would be a Boston contract, whether he gave no note, or a note payable in Boston, or one without express place of payment." We think it quite plain that the note in suit is an Ohio contract, notwithstanding it was signed by Mrs. Harley

in Tennessee, it having been delivered and consummated in Ohio, and is payable in that State, as the place of performance. *Armstrong* v. *Best,* 112 N. C., 59 (17 S. E., 14, 25 L. R. A., 188, 34 Am. St. Rep., 473); *Milliken* v. *Pratt,* 125 Mass., 374 (28 Am. Rep., 241).

The next inquiry is whether the plea of coverture to a note made in Ohio, valid and enforceable against a married woman in that State, is available in a suit on said note in this State, where such a contract is voidable at the election of the married woman. In Story, Confl. Laws, c. 4, sec. 103, it is said: "In regard to questions concerning infancy, competency to marry, incapacities incident to coverture, guardianship, and other personal qualities and disabilities, the law of the domicile of birth, or other fixed domicile is not generally to govern, but the *lex loci contractus aut actus,* the law of the place where the contract is made or the act done," or, as he elsewhere sums it up, "although foreign jurists generally hold that the law of the domicile ought to govern in regard to the capacity of persons to contract, yet the common law holds a different doctrine, namely, that the *lex loci contractus* is to govern." Story, Confl. Laws, secs. 103, 241.

Chancellor Kent, while at one time inclined to the doctrine of the civilians, afterwards approved the doctrine which has just been quoted from Mr. Story. 2 Kent, Comm., 233, note, 458, 459, and note. The

same doctrine was announced by this court in *Pearl*
v. *Hansborough,* 9 Humph., 426, in an opinion by
Judge Turley.   Applying this rule, it was held in
*Milliken* v. *Pratt,* 125 Mass., 374 (28 Am. Rep., 241),
Mr. Justice Gray delivering the opinion of the
court, that a contract of guaranty, signed by a
married woman, domiciled with her husband in Mas-
sachusetts, and sent by mail to Maine, where it was
accepted and acted on, was a contract made in the
State of Maine, and, when sued on in the State of
Massachusetts, would be determined by the law of
Maine.   In that case it appeared that by the statutes
of Maine, in force at the date of the contract of
guaranty, the contracts of a married woman were
valid and enforceable as if made by a *feme sole,* while
the law of Massachusetts, as then existing, did not
allow her to enter into a contract as surety or for
the accommodation of her husband.   But it further
appeared, that, since the making of the contract sued
on, and before the bringing of the action, the law of
Massachusetts had been changed so as to enable mar-
ried women to make such contracts.   The court of
Massachusetts therefore permitted a recovery against
a married woman on the contract of guaranty
made in Maine.   See, also, *Bell* v. *Packard,*
69 Me., 105 (31 Am. Rep., 251).   But in Tennessee
the contracts of a married woman are voidable, and
will not be enforced against her when there is a plea
of coverture.   It would be a strange anomaly to hold

that such a contract made by a married woman in Tennessee would not be enforced by our courts, while the same contract, if made in another State, would be valid and enforceable.

As stated by Mr. Justice Gray, in *Milliken* v. *Pratt*, supra: "As the law of another State can neither operate nor be executed in this State by its own force, but only by the comity of this State, its operation and enforcement here may be restricted by positive prohibition of statute. . . . It is possible, also, that in a State where the common law prevailed in full force, by which a married woman was deemed incapable of binding herself by any contract whatever, it might be inferred that such utter incapacity, lasting throughout the joint lives of husband and wife, must be considered as so fixed by the settled policy of the State for the protection of its own citizens that it could not be held by the courts of that State to yield to the law of another State in which she might undertake to contract."

While it is true, as contended by counsel in his very able argument, that the tendency of legislation in Tennessee is to enlarge the contractual power of married women, yet such power is very limited and circumscribed, and the settled policy of this State is to declare nugatory contracts made by her whenever her plea of coverture is interposed.

In *Bank* v. *Walker*, 14 Lea, 299, it was held that the *lex loci contractus* would govern when not re-

pugnant to the *lex fori*. The court stated the rule to be: "Whether we consider the subject-matter under the head of comity and its rules, or under that of real and personal statutes and its rules, either or both sustain the position that the *lex loci contractus* as to relations and property rights will prevail over the *lex fori*, unless the enforcement of the former will work an injury to the subjects of the latter, or is prohibited by the laws of the latter."

It was further said that rights and contracts arising under the laws of a foreign State will not be enforced here, except under the doctrine of the comity of States, and that this doctrine neither requires nor sanctions the enforcement in the courts of this State of statutory rights and contracts arising under the laws of a foreign State which are repugnant to the policy and spirit of our laws.

For the reasons indicated, the decree of the court of chancery appeals is affirmed.