[No. 3469.]

## COCKBURN ET AL. v. KINSLEY.

1. PLEADINGS—*Allegations on Information and Belief.* The complaint alleged, as to material facts, that plaintiff "is informed and verily believes," without the additional allegation "and on information and belief avers." Held the omission did not impair the sufficiency of the complaint, and the cause having been tried without regard to it, it was disregarded on appeal.

2. —— *Amendment.* Action against the officers of a foreign corporation, upon a promissory note of the corporation, which, it was alleged, though doing business in Colorado had failed to file with the secretary of state any copy of its charter as required by statute (Rev. Stat., sec. 916). An amendment of the complaint to the effect that such corporation had been carrying on business in Colorado for about one year prior to the execution of the note, *held* properly allowed.

3. CONTRACTS—*Law of Place.* The law of the place where the contract is made controls as to its validity and the capacity of parties; the law of the place of performance, with reference to all questions concerning performance, whether the action is brought at the place of performance

or elsewhere; and the law of the forum as to all questions concerning the remedy.

The capacity of a corporation is determined by the law of its creation, but may be restricted or encumbered with conditions by the statute of another state where it attempts to contract.

When the capacity or authority of an agent, executor, or administrator is in question, the law of the state or country where the relation was created necessarily enters as a factor.

But even though the party making the contract was capable thereto, it may still be unenforcible, because it calls for the performance of acts, to which, according to the law of the place of performance, such person is incompetent.

A foreign corporation doing business in Colorado fails to file with the secretary of state a copy of its charter as required by statute. A promissory note executed by such corporation in Colorado, but payable in another state, charges the officers of the corporation, under Rev. Stat., sec. 919.

4. CORPORATIONS—*Foreign—Liability of Officers and Members.* The statute requiring every foreign corporation doing business in Colorado to file with the secretary of state a copy of its charter, and imposing upon the officials and members of such corporation personal liability upon all contracts of the corporation made within this state (Rev. Stat., secs. 916, 919), was intended primarily for the protection of our own citizens, and applies only to such foreign corporations as engage in the general prosecution here of the business for which they were incorporated.

A single transaction is not "doing business," and the phrase does not include the mere sale of shares, measures taken for promoting the affairs of the corporation, or meetings of the directors for such purposes only.

A corporation organized under the laws of Arizona was operating a mine located in the republic of Mexico. The directors of the corporation resided in Colorado Springs, and the superintendent of the mine corresponded with them in reference to his operations. Certain shares of stock had been sold at Colorado Springs by correspondence with a party in Chicago. The treasurer, of his own motion, had caused letter-heads to be printed, designating a certain office in Colorado Springs as the main office of the company. The corporation owned no property in Colorado, and, save to execute one promissory note evidencing the loan of money, had never done any business within the limits of Colorado. In an action upon this note against the officers of the corporation, under Rev. Stat., secs. 916, 919, *held* that the corporation had not "been doing business" within the meaning of the statute.

5. STATUTES—*Construed.* The act of 1901 (Laws 1901, c. 52, Rev. Stat., secs. 901-912) has not the effect to repeal Rev. Stat., secs. 916, 919.

*Appeal from El Paso District Court.* HON. JOHN W. SHEAFOR, Judge.

Messrs. JOS. P. TRICKETT, W. M. SWIFT, GEORGE H. THORNE and LAWRENCE T. GRAY, *pro se,* for appellants.

Messrs. H. K. WING and J. A. CARRUTHERS for appellee.

MORGAN, J.

Plaintiff had judgment in the El Paso district court in January, 1909, on his complaint filed in April, 1908, on a promissory note. Defendants appealed. The complaint set forth a copy of the note as follows:

"$1500.00          Colorado Springs, Colo.,
                         "Sept. 28, 1907.

"Thirty days after date, we promise to pay to the order of M. F. Schutt Fifteen Hundred Dollars, at 216 Security Bank Building, Minneapolis, Minn., with interest at 8 per cent per annum from Sept. 28 until paid.

                "Value received.

          "THE BAVICANORA MINES COMPANY,
                "By Geo. A. Cockburn, Secy.
                "By Geo. E. Maxwell, Prest."

The action is against Cockburn and Gray, two of the board of directors of the company that made the note. The complaint states that the company was incorporated and existing under and by virtue of the laws of Arizona Territory; that it had been doing business within this state for about one year prior to the date of the note; that it had not on that date or prior thereto, or at all, filed with the secretary of state a copy of its charter of incorporation, or a certificate, and that the payee had assigned the note to the plaintiff before the commencement of the action.

A general demurrer for insufficiency and for defect of parties was overruled.

The answer denies that the company was "doing business" in Colorado and denies that the note was made and delivered therein.

It may be seen from these pleadings that the plaintiff's right to recover against the defendants, personally, depends upon the effect of a failure on the part of the company to comply with the statutes that require the filing by foreign corporations of their articles of incorporation with the secretary of state.

The appellants contend that the general demurrer should have been sustained because the complaint, on alleging certain facts on information and belief, states, "that the plaintiff is informed and verily believes," but fails to follow up such statement with the words, "and upon such information and belief alleges." Our code provides how such allegations should be made and the plaintiff failed to comply with it, but this case should not be reversed for this reason alone, as the technical defect did not destroy the general sufficiency of the complaint and the defendant thereafter answered and the case was tried regardless of this defect.

The appellant also contends that the court erred in permitting the plaintiff to amend his complaint by inserting the words, "and for about one year prior thereto," immediately preceding the words, "doing business within the State of Colorado." It was proper to allow this amendment and it did not prejudice the rights of the defendants to such an extent that the case should be reversed on account thereof as the defendants answered and proceeded to trial on the issues.

The appellant discusses the other assignments of error under three propositions, which will be disposed of in the following order:

1.   That the action on the note with reference to the

defendants' personal liability, or otherwise, is governed by the laws of Minnesota, where the note was made payable.

2.    The statute of 1877, by virtue of which the plaintiff seeks to hold the defendants liable, personally, was repealed by implication by the general corporation law of 1901.

3.    That the company was not "doing business" in this state within the meaning of the statute.

As to the first proposition, it is concluded that the law of this state is applicable and governs the liability of these defendants, personally, under the statute involved, if the company "was doing business" in this state within the meaning of the statute.

Certain facts should be kept in mind; the note was specifically made payable in Minnesota; it was made and dated in Colorado; suit was brought in Colorado against two directors living in Colorado. During the consideration of this point we shall concede that the company was "doing business" in Colorado and had failed to file its articles of incorporation as required by statute. (The facts, that the company is an Arizona company, that the mines are located in Mexico, and that the directors held meetings in Colorado Springs, are only necessary in the consideration of the third proposition.)

The law is quite plain that where the contract is made in one state and performance is to be in another, the law of the place of performance governs with reference to all questions concerning the performance, whether the suit be brought in that place or not—sec. 398, Wharton on Conflict of Laws—and that the law of the place where the suit is brought governs in all questions concerning the remedy—Id., sec. 427k, 428a—and that the law of the place where the contract is made governs all questions concerning the validity of the note and the capacity of the makers thereof.—Id., sec. 427k et seq.;

*Wolf v. Burke,* 18 Colo., 264-8, 32 Pac., 427, 19 L. R. A., 792.

Wharton on Conflict of Laws, sec. 393, says:

"Hence it is that when we come to determine the seat of an obligation, from which seat its legal relations are inferred, we find ourselves in a labyrinth of speculations, from which we can only emerge by following the landmarks of arbitrary, juridical rules. It follows, from the nature of the case, that these rules, applied as they are by so many courts, in so many distinct legal atmospheres, to so many varying states of fact, and without any imperative principle to appeal to, should often conflict."

In sec. 401, he says:

"A contract, so far as concerns its formal making, is to be determined by the place where it is solemnized, unless the *lex situs* of property disposed of otherwise required; so far as concerns its interpretation, by the law of the place where its terms are settled, unless the parties had the usages of another place in view; so far as concerns the remedy, by the law of the place of the suit; and so far as concerns its performance, by the law of the place of performance.

"The rule, it is true, is sometimes differently expressed. Thus, in the Supreme Court of the United States, in 1875, it was said, in *Scudder v. Union Nat. Bank,* 91 U. S., 406, 23 Law Ed., 245, by Mr. Justice Hunt, that: 'Matters bearing upon the execution, the interpretation, and the validity of a contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy, such as the bringing of suits, admissibility of evidence, statutes of limitations, depend upon the law of the place where the suit is brought.' To this statement, however, it may be objected that in cases where the place of making the contract conflicts with the law of

the place of performance, the validity of the contract, so far as concerns its performance, depends upon the law, not of the former but of the latter place. It has hence been frequently held that a contract illegal by the law of the place of performance is illegal everywhere. On the other hand, an action may be maintained on a debt good where it is payable, though invalid by the local laws of the place where the contract is made. But the conflict of opinion in this respect is rather nominal than real." See also sec. 402.

In sec. 427h, he says:

"The capacity of the parties to contract is one of those matters that relates to the preliminary question, whether, in a legal sense, any contract has been brought into existence; and its governing law should be determined by a fixed rule not dependent upon the intention of the parties. * * * "

When the party whose capacity is in question is an artificial person, like a corporation, its capacity is necessarily determined, or at least limited, by the law of its creation, though its capacity may be still further restricted, or at least encumbered with conditions, by a statute of another state or country in which it attempts to contract. So, when the question relates to the capacity or authority to contract, of a person who acts in a representative capacity, as an agent, or executor or administrator, the law of the state or country in which such relation was created necessarily enters as a factor. This is a mere result of the principle stated, *ante,* sec. 427f, that any matter relating to the preliminary question whether a contract has been made, is governed by the law of its *situs,* whether that *situs* be at the place where the contract is attempted to be made or elsewhere. * * *

As between the law of the place where the contract is made and that of the place where it is performable, the weight of authority favors the former. In other

words, this matter comes within the first rule of the *Scudder* case, which, for this purpose, may be treated as an absolute rule, not dependent upon the intentions of the parties.

A distinction is to be observed, however, between the capacity of a party to make a contract, and his or her capacity to do the act essential to its performance. It seems clear that, while the former question is governed by the law of the place where the contract is made, the latter ought to be governed by the law of the place of performance. So that, even assuming that a party was capable of making a contract by the law of the place where it was made, it may still be invalid and unenforcible because it calls for the performance of acts which, according to the law of the place of performance, he or she is not competent to do. It will be observed, however, that this is upon the assumption that the law of the place of performance renders one incapable of doing the acts essential to the performance of the contract, and not merely that it would render him incapable to make the contract in the first instance. In a note to this section is found: "In *Campbell v. Crampton*, 18 Blatchf., 150, 2 Fed., 417, the court, after a full discussion of the subject, laid down the general principle that the capacity of a party to make a personal contract is to be determined by the law of the place where the contract is made, notwithstanding that it is performable elsewhere."

See also, sections 427r and 427s.

In sec. 439a, he says, quoting from the case of *Howenstein v. Barnes*, 5 Dillon, 432:

"Any interpretation or construction applicable or incidental to the performance should be governed by the law of the place of performance, and such matters of construction or interpretation as go to the execution and validity of the contract are determined by the laws of the place where the contract was made."

In 9 Current Law, 596, it is stated that, "All matters bearing upon the execution, interpretation, and validity of a contract, and measure of damages for breach thereof, are determined by the law of the place where the contract is made." And in the notes the following: "When a contract is made in one state to be performed in another, the *lex loci contractus* controls as to the nature, validity, obligation, construction, and interpretation of the contract.—*Missouri Life Ins. Co. v. Lovelace* (Ga. Ap.), 58 S. E., 93. Parties are presumed to contract with reference to the place of the contract, and if it is valid there it is valid everywhere.—*Id.* Validity of contract made by resident of New Jersey in Pennsylvania, as affected by statute of frauds, governed by law of Pennsylvania.—*Calloway v. Pretty* (Pa.), 67 A., 418."

In a Tennessee case a promissory note was made by a married woman in that state and made payable in Ohio, but on a suit on the note in Tennessee, she pleaded the law of coverture of that state, and defeated the action.— *First Nat. Bank of Geneva v. Shaw,* 109 Tenn., 237, 70 S. W., 807, 59 L. R. A., 498, 97 Am. St., 840.

The converse of this rule is not so plain; where a note is made in a state where a married woman would be liable on her individual obligations and payable in another state where she would not, and suit brought in the state where the note was made; *quaere,* could she, the maker, defeat the right to recover in the state where the note is made?

It is not believed she could, for, when she made the note, it was, then and there, impressed with the law of the state where made, and such law would certainly be enforced against her there. And, it would seem to follow that, in the present case, the law of this state making the defendants personally liable would be impressed upon the note involved herein, and would be enforced against them here.

The controlling proposition is whether the liability of the defendants in the present case comes either within matters bearing upon the *execution, interpretation,* and *validity* of the contract, including the capacity of the parties, or, within the law governing the *remedy* thereupon. It appears to come within both of these factors; and, if the note was made in violation of the statute, it became subject to the effect of such statute imposed upon the directors or stockholders of the company that made it. In other words, such making of the note affected it as if each director's name was signed on the note at the time it was made; therefore, the judgment of the lower court is right upon this point. See also *Cook v. Merritt,* 15 Colo., 212, 25 Pac., 176; *Jones v. The Aspen Hdw. Co.,* 21 Colo., 263, 40 Pac., 457, 29 L. R. A., 143, 52 Am. St., 220.

It seems also that the law of this state would govern, because applicable to the remedy, although the law as to the *right,* and the law as to the *remedy* must not be confused.

Pomeroy, in sec. 2 of his Remedies and Remedial Rights, defines *remedy* as the "final means by which to maintain and defend primary rights and enforce primary duties." Plaintiff's primary right in this case is to have the note paid, but whether his remedy is governed entirely by the laws of Minnesota where the note is made payable, or by the laws of Colorado where the note was made, and where the suit was brought, is a difficult question. It will be observed in this instance that the *lex loci contractus* and the *lex fori* unite, but the *lex loci solutionis* is in Minnesota, because the note is made payable there. The law of Minnesota would govern on all questions as to the *mode* of payment, *days of grace, protest on nonpayment,* the *kind of money* in which payment is made, and, possibly, the *negotiability* of the note; but as to the *validity,* including the capacity of the parties, and the

primary right of the plaintiff to enforce payment against these defendants because of any law of Colorado that entered into the making and final validity of the contract, it would be governed by the law of the place where the note was made and by the law of the place where suit was brought; and the plaintiff's remedy would include his right to rely, in stating his cause of action, upon the law of Colorado making the defendants liable individually. The plaintiff's remedy depends upon his primary right, and the delict or wrong of the defendants, and either may arise out of the contract as to the defendants' duty, or the invasion of the plaintiff's right in the making of the contract, or in the failure to perform it.

Under the Tennessee case the defendants could plead any law of the *forum* that would exempt them from liability, and the converse ought to be true that they cannot resist the effect of a law of the *forum* that makes them liable.

The *second* proposition is merely introductory to the third, and is wholly untenable on the part of appellant, as the law of 1901, by which it is claimed the law of 1877 was, by implication, repealed, provides *additional* requirements of foreign corporations and neither expressly nor by implication repeals the former law.

The *third* proposition involves a determination of what is meant under the statute by the term "doing business." I have reached the conclusion that the acts and things done and the business transacted by the company in this case do not come within the meaning of the words "doing business," as such words are used in the statute relied upon.

The record discloses that the Bavicanora Mines Company held directors' meetings in Colorado Springs and at one of these meetings borrowed $1,500.00 from the plaintiff's assignor and used the money to pay the vice-president of Mexico upon the lease of the company's

mines in that country, the money being sent to Mexico for that purpose on the day the note was executed, and the money received. Some stock in the company was sold and issued at Colorado Springs by correspondence with a man in Chicago. It also appears that the treasurer, on his own responsibility, had some letterheads printed designating a certain office in Colorado Springs as the main office of the company. It appears from the evidence that this was all the business that was transacted in Colorado Springs, and that the company transacted all of the business in reference to operating its mine in Mexico, where the mine is situated. This mine was run by a superintendent in Mexico who corresponded with the directors in Colorado Springs in reference thereto. The company owned no property in Colorado.

The authorities seem to agree that the purpose of a statute such as ours requiring foreign corporations to file a certificate or charter is to protect creditors or other obligees of such corporation, with reference, I should say, to the citizens of the state enacting the statute. The authorities agree also that a single act or business transaction is not "doing business" within the meaning of the statute, and that "doing any business" means business involving transactions concerning the actual purposes for which the corporation was organized, and does not include transactions between corporators and stockholders themselves, involving transactions concerning promotion, transfers of stock and meetings of the board of directors for such purposes only. Whether the execution of the note and the borrowing of money, as in this instance, is "doing business" within the meaning of the statute can be determined only by an examination of similar cases involving a similar transaction.

It is contended by the appellee that, as the constitution uses the expression "doing any business," and the statute uses the same expression in sec. 917, that a single

act of business would control the effect of the statute. However, secs. 920 and 921 of the same act use the words "doing business." The first interpretation of the constitutional provision and said statute was by our supreme court in the case of *Utley v. The Clark-Gardner L. M. Co.*, 4 Colo., 369, wherein the court construes the terms used to mean "engaging in or carrying on business," and said: "The prohibition extends to doing business before compliance with the terms of the statute. We do not think this is an abridgment of the right of a foreign corporation to sue. It extends only to the exercise of the powers by which it may be said to ordinarily transact or carry on its business. To what *extent* the exercise of these powers is affected we do not decide."

In the case of *Cooper Manuf. Co. v. Ferguson et al.*, 113 U. S., 727, 28 L. Ed., 1139, 5 S. C. Rep., 739, construing the same provisions, the court said:

"Reasonably construed, the constitution and statute of Colorado forbid, not the doing of a single act of business by a foreign corporation without the filing of the certificate and the appointment of an agent as required by the statute. * * * To require such a certificate as a prerequisite to the doing of a single act of business when there was no purpose to do any other business in the state, would be unreasonable and incongruous."

Thompson, in his work on corporations, announces the same construction in sec. 6670, as follows:

"This is seen from the fact that the particular transactions are frequently described as 'independent,' 'isolated,' 'incidental' and 'casual,' not of a character to indicate a purpose to engage in business within the state. And, to constitute doing business within the meaning of such statutes, there must be a doing of some of the works, or an exercise of some of the functions, for which the corporation was created. And a distinction is to be drawn between the purposes of a corporation and its powers.

The term 'business' used in such statutes means an established business, either in connection with or apart from some business that had its domicile in another state. 'Doing. business' within the meaning of such a statute is the maintaining an office and having capital invested and carrying on a regular business; that is, maintaining an office and having a capital invested and carrying on a regular business in the state."

In 10 Cyc., 1270, the same view is expressed, as follows:

"These prohibitions are leveled against the act of foreign corporations entering the domestic state by their agents, and engaging in the general prosecution of their ordinary business therein, and they do not apply therefore to acts not constituting any part of their ordinary business."

The author cites the following cases which havè been examined: *Ware v. Hamilton Brown Shoe Co.*, 92 Ala., 145, 9 So., 136; *Colorado Iron Works v. Sierra Grande Mine Co.*, 15 Colo., 499, 25 Pac., 325, 22 Am. St. Rep., 433; *Mandel v. Swan Land etc. Co.*, 154 Ill., 177, 40 N. E., 462, 45 Am. St. Rep., 124, 27 L. R. A., 313; *John Deere Plow Co. v. Wyland*, 69 Kan., 255, 76 Pac., 863, 2 Ann. Cas., 304; *Hogan v. St. Louis*, 176 Mo., 149, 75 S. W., 604; *People v. Wemple*, 131 N. Y., 64, 29 N. E., 1002, 27 Am. St. Rep., 542; *Galena Min. Co. v. Frazier*, 20 Pa. Sup. Ct., 394; *Cooper Manuf. Co. v. Ferguson, supra.*

The testimony was undisputed that the president of the company in the present case brought with him to Colorado Springs from Minnesota a certified check of his son-in-law, the payee of the note, and turned it over to the treasurer of the company at Colorado Springs at the time the note was made. He indorsed the note and asked the defendants to do so at the same time, but they refused. Such business was in the nature of a transaction peculiar to the corporate powers of the company relating

to its internal concerns, disconnected and distinguished from the purposes of the statute involved, and not connected with anyone that the statute was enacted to protect, and when we apply the terms "carrying on business" and "engaging in business" to this particular instance, or to any of the business such company did at Colorado Springs, we find such business foreign to such terms. Of course, it was doing business, but not in the sense intended by the statute, that is, it was not "engaging in business" nor "carrying on business" in this state under the statute.—*Caesar v. Capell* (U. S.), 83 Fed., 403, 422.

In 10 Cyc., 1267-8, the author says:

"A definition, in an act relating to the service of process, of what shall be considered as doing business within the state by a foreign corporation, will not control as to what is doing business within the state under a statute forbidding foreign corporations to do business within the state until they shall have filed their charters in every county where they intend to do business, under a statutory penalty."

From this, and the authorities upon which it is based, it clearly appears that cases involving motions to quash the service upon a foreign corporation are not controlling in cases such as the present one. It must be true, however, that decisions in cases involving the question of service wherein it is held that the foreign corporation is *not* "doing business" within the meaning of a statute permitting service in the prohibiting state are quite controlling in cases such as the present one because an inconsiderable transaction of business ought to be sufficient in the former instance that would not be at all sufficient in the latter.

In the case of *Stegall v. Pigm. & Chem. Co.*, 150 Mo. Ap., 251, 290, 130 S. W., 144, involving a motion to quash the service under a statute permitting service in Missouri

on a foreign corporation, the court overruled the motion and held that the foreign corporation was "doing business" in the state to an extent sufficient to justify service upon it in a suit brought by one of its clerks who kept its books in St. Louis, Mo. This is one of the strongest cases cited by the appellee to support his contention, but as it is based upon a statute concerning service, it would not control the rule in the present case. Furthermore, the court found in that case that the company, although incorporated in Arizona and operated in Illinois, yet, it held its meetings and made its contract with the plaintiff in Missouri, and that the work done by the plaintiff was done in Missouri. The plaintiff was a resident of that state, the company kept its bank account there, made its contracts and paid out its moneys there, and it was there that the "brain work" was done necessary to conduct its business. These facts would be sufficient upon which to hold that the company was "doing business" in Missouri to such an extent that the suit in question could be sustained by the service upon the president of the company in St. Louis, although this is not conclusive nor does it directly indicate that the same court would have held on the same facts that such acts and transactions would not be sufficient to hold the directors personally responsible in a case such as the present one.

In the case of *U. S. Rubber Co. v. Butler Bros. Shoe Co.,* 132 Fed., 398, relied upon by appellee, it is held that a foreign corporation, not having complied with the 1901 act, and having "set up business in Colorado with a factor in charge and carried on business quite extensively," could not sue upon contracts for the sale of goods in Colorado "manufactured by it in another state and consigned to respondent from time to time," because such corporation was "doing business" in this state within the meaning of the statute. No such business was done in the present case.

The John Deere Plow Co. case, *supra,* relied upon by appellee, is quite similar in many respects to the *Rubber Company* case and is not in point for the same reason; but, even in that case, the Kansas court clearly distinguished the facts involved from those present here. The court, in that case, said, in 69 Kan., 259, 76 Pac., 864, 2 Ann. Cas., 364:

"Although the record in each case discloses but one transaction of the corporation, that transaction was not merely incidental or casual; it was a part of the very business for the performance of which the corporation existed; it did distinctly indicate a purpose on the part of the corporation to engage in business within the state, and to make Kansas a part of its field of operation, where a substantial part of its ordinary traffic was to be carried on. Therefore, although a single act, it constituted a doing of business in the state within the meaning of the statute, while several acts of a different nature might not have had that effect."

The same distinguishing feature exists in the case of *Farrior v. New England Mtge. & Sec. Co.,* 88 Ala., 275, 7 So., 200, another case relied upon by appellee. Although in that case the court said that "doing any business" is more comprehensive than "carrying on business" generally, and took issue with the construction given the Colorado statute in the case of *Cooper Min. etc. Co. v. Ferguson, supra,* yet, as the latter case is a direct construction of our statute, it must control.

The case of *The People v. The Horn Silver Min. Co.,* 105 N. Y., 76, 11 N. E., 155, a case relied upon by both appellant and appellee, involved the taxation of the company's property. The company claimed the benefit of an exemption in favor of manufacturing companies. The court held it was not a manufacturing company in New York, although it might be in Utah where its plant was located. The company claimed also that it was not "do-

ing business." in New York, as the statute provided. In holding the company liable for taxation, the court said:

"The business did not consist of occasional transactions, but an office was kept there, and the business continually transacted there during the whole year. We cannot construe the words 'doing business in this state' to mean the whole business of the corporation within this state; and, while we are not prepared to hold that an occasional business transaction, that keeping an office where meetings of the directors are held, transfer books kept, dividends declared and paid, and other business merely incidental to the regular business of the corporation is done, would bring a corporation within this act; yet when, as in this case, all these things are done, and in addition thereto a substantial part of the regular business of the corporation is carried on here, then we are unable to say that the corporation is not brought within the act as one 'doing business in this state.' There is no injustice in subjecting to taxation such a corporation enjoying the benefits of our great mart, the advantages of our social order and the protection of our laws."

In the case of *Penn. Collieries Co. v. McKeever*, 183 N. Y., 98, 103, 75 N. E., 935, 2 L. R. A. (N. S.), 127, the court, construing a statute requiring foreign corporations "doing business" in the state to procure a certificate to transact business, the court said:

"The rule was early declared that, unless interdicted by the state, a foreign corporation could perform within its boundaries single corporate acts, or conduct its corporate business, when not prohibited by our laws, or when not violative of public policy (*Bard v. Poole*, 12 N. Y., 495; *Hollis v. Drew Theological Seminary*, 95 ib., 166), and the enactment of the present General Corporation Law was intended to regulate its existence here, if proposing to do business, by the imposition of reasonable conditions. But no such narrow policy was intended to

be declared by the statute as the prohibition of all cor-
porate transactions by foreign corporations, irrespective
of their nature, or of the condition under which they oc-
curred; nor does the language indicate it.  To bring into
operation the statutory provision, the facts should show
more than a solitary, if not accidental, transaction, as was
the one before us.  They should establish that the cor-
poration was conducting a continuous business.  To be
'doing business in this state' implies corporate continuity
of conduct in that respect; such as might be evidenced
by the investment of capital here, with the maintenance
of an office for the transaction of its business, and those
incidental circumstances, which attest the corporate in-
tent to avail itself of the privilege to carry on a busi-
ness.''

In the case of *Bradbury v. Waukegan & Wash. Min.
Co.*, 113 Ill. App., 600, 607, in reference to what consti-
tutes ''doing business,'' the court said:

''Opening an office in Waukegan, and placing a safe
and some office furniture therein for the convenience and
use of the secretary and treasurer, where he issued cer-
tificates of stock, kept the books, and the holdings of di-
rectors' meetings there, together with the other acts
charged to have been done in Lake county, bear no re-
semblance to the powers and objects of this corporation,
as set forth in the articles of incorporation.  There is no
pretense that the company owned any mining properties
in this state, or that it was doing a mining or smelting
business here.  All of its mining properties were in the
state of Washington, and not in Illinois.''

In the case of *The Union Trust Co. v. Sickles*, 125
(N. Y.) Ap. Div. Rep. Sup. Ct., 105, 109, 109 N. Y. Sup.,
262, 264, the court, construing the words ''doing busi-
ness'' used in a statute, said:

''The only business which the complaint shows it had
done anywhere or at any time was the making of the col-

lateral trust mortgage to the Security Trust Company of Rochester to secure the total issue of $25,000,000 bonds, the making of this underwriting agreement, constituting the manager, as its agent, to sell $2,500,000 of these bonds, others of which had apparently already been disposed of, the procuring by the agent of defendant's signature to this underwriting agreement, the receipt of moneys from the defendant on his contract, delivery to him of the bonds he thus paid for, and the assignment of the underwriting contract to plaintiff to secure the payment of a note given the latter for a loan of $43,000. All of these facts relate only to and are a part of an apparently legitimate effort on the part of the telephone company to dispose of its bonds; that is, in other words, to borrow money. What the expression 'doing business,' or to 'do business,' within this state, as used in the statute, really means has received judicial attention in many cases; but, except in the present case, it does not seem to have been yet held that a foreign corporation was doing business in this state, within the meaning of the statute, when it had done no business therein beyond presenting for sale and selling to individual purchasers, or floating on the market, either its stock or bonds.—*Payson v. Withers,* 19 Fed. Cas., 29, 30. The plain reading of the statute shows that it was intended to prevent a foreign corporation from doing in this state the business for the doing of which it was organized, until it had procured the required certificate, and that it does not contemplate a prohibition, either of the sale of its stock, or borrowing money on its obligations. It obviously relates only to the regular and customary business operations of the corporation.''

See also *In re Ala. & C. R. Co.,* 1 Fed. Cases, page 271.

The conclusion is that our constitutional and statutory provisions, construed under the criterion and in the light of the foregoing authorities, do not include within

their purview such transactions as the evidence discloses in this case. The policy and purpose of these provisions are to require foreign corporations, upon entering the state and engaging in the general prosecution' and operation of the ordinary business which they were incorporated to carry on, to file their articles of incorporation or other authority under which they are authorized to 'act as a corporate body, and to designate state agents and a principal place of business, in order that the state authorities may supervise and control their transactions, in common, as far as may be, with its domestic companies, and to the end that the citizens of this state may be advised and protected in their transactions with them to such an extent as these statutory requirements may afford.—*Caesar v. Capell, supra;* 3 Words and Phrases, 2155 *et seq.; Penn. Collieries Co. v. McKeevor, supra.*

It is determined, therefore, that the Bavicanora Mines Company was not "doing business" or "doing any business" in this state within the meaning of the constitutional and statutory provisions aforesaid, of such a nature, or to such an extent, that it was required to comply with such provisions, and that the defendants are not liable, therefore, on the note sued upon.

Reversed with directions to dismiss the suit.