## TAYLOR et al. v. LEONARD.   (No. 3021.)

(Court of Civil Appeals of Texas. Texarkana. May 14, 1925. Rehearing Denied June 11, 1925.)

**1. Contracts ⬤144—Laws of place where contract made generally control construction.**

Generally laws of place where contract is made, when different from those of forum, control, both in construction of contract and in determining nature and extent of legal obligations embraced.

**2. Courts ⬤8—Lex loci contractus not given effect when contravening public policy of lex fori.**

When to enforce a foreign contract, according to provisions of foreign laws, will contravene public policy of state of forum, such foreign laws will not be enforced.

**3. Contracts ⬤108(1)—Public policy found in common law as well as in statutory limitations.**

Public policy of state is to be found in unwritten or common-law restrictions, as well as in its statutory limitations.

**4. Common law ⬤1—Common law, except as altered by statute, as much part of local jurisprudence as enactments of Legislature.**

The common law, except as altered by statute, is just as much a part of local jurisprudence as are enactments of Legislature.

**5. Constitutional law ⬤89(1)—Right of contract necessary incident to right to own and hold property.**

In absence of some positive law to contrary, right of contract is necessary incident to right to own and hold property.

**6. Husband and wife ⬤79—Contracts of married woman voidable and not void.**

Contracts of married woman are not void, but only voidable.

**7. Husband and wife ⬤56—Contract entered into by married woman, resident of Texas, temporarily residing in foreign state, enforced according to law of Texas.**

In view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 4624, 4629a, held that contract for sale of real estate, entered into by married woman, resident of Texas, while temporarily residing in California, will not be enforced in Texas according to law of California, but according to Laws of Texas, and hence no personal judgment could be entered against her, where she interposed her plea of coverture.

Appeal from District Court, Lamar County; Newman Phillips, Judge.

Action by D. A. Leonard against Veryl Georgette Taylor and another. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

Wright & Baldwin, of Paris, for appellants.

W. F. Moore, of Paris, for appellee.

HODGES, J. This suit was instituted by the appellee, Leonard, against the appellants to recover damages for the breach of a contract. According to the facts, about which there is no apparent disagreement, the appellants are husband and wife, and at the time this suit was filed resided in Texas. In February, 1920, Mrs. Taylor owned in her separate right a tract of land situated in the state of California. On the 3d day of the month above mentioned, while she and her husband were temporarily residing in that state, Mrs. Taylor entered into the following written contract:

"This agreement, made this 3d day of February in the year nineteen hundred and twenty between Veryl Georgette Taylor of Calexico, county of Imperial, state of California, hereinafter designated as the seller, and J. L. Manahan of Calexico, county of Imperial, and state of California, hereinafter designated as the buyer, witnesseth:

"That the said seller, in consideration of the covenants and agreements hereinafter contained and made by, and on, the part of said buyer, agrees to sell and convey unto the said buyer, and said buyer agrees to buy all that certain lot, piece, or parcel of land situated, lying, and being in the city of Calexico, county of Imperial, state of California, and bounded and particularly described as follows, to wit, all of lot seventy-six (76) of Melrose Park as' per map of said plat now on record in Book two (2) at page seventy-seven (77) of Maps Records of Imperial county, for the sum of one thousand and no/100 dollars, in gold coin of the United States, and the buyer, in consideration of the premises, agrees to buy, and to pay to the seller the said sum of one thousand and no/100 dollars, as follows, to wit, two hundred fifty and no/100 dollars upon the execution and delivery of this agreement, receipt of which is hereby acknowledged, and the further sum of two hundred fifty and no/100 dollars on the 3d day of May, 1920, and two hundred fifty and no/100 dollars on August 3d, 1920, and two hun-

---

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

dred fifty dollars on November 3d, 1920, with interest at the rate of 7 per cent. per annum, payable quarterly from date. Taxes for the current year 1919–20 to be paid by 1st inst. by seller and 2d inst. by buyer, who agrees to pay all assessments levied subsequent to the date hereon; all payments on this contract to be made at the First National Bank.

"It is understood and agreed that time is the essence of this contract, and, should the buyer fail to comply with the terms hereof, then the seller shall be released from all obligations in law and equity to convey said property, and the buyer shall forfeit all right thereto and to all moneys theretofore paid under this contract; but the seller, on receiving the full payments at the time and in the manner above mentioned, agrees to deliver a certificate of title showing the title to be vested in himself, and seller agrees that all payments on street work are to be paid to date, and to execute and deliver to the buyer or his assigns a good and sufficient deed of grant, bargain, and sale.

"In witness whereof the parties hereto have affixed their hands and seals the day and year first above written.

"[Signed]   Veryl Georgette Taylor.  [Seal.]
       "J. L. Manahan.           [Seal.]
"Signed, sealed, and delivered in the presence of ———."

While apparently willing for his wife to make this contract, the husband did not join in its execution. Manahan, a party to the contract, later assigned his interest to Leonard, the appellee in this appeal. All of the payments except the last were made. Upon the failure of Leonard to pay that at maturity, Mrs. Taylor exercised her option to declare the contract forfeited and conveyed the land to another party. Leonard's demand for a return of the money which he had previously paid was refused. He then filed this suit to recover as ·damages the amount. he had previously paid on the purchase price of the land, and $250 additional. The trial below resulted in a personal judgment against Mrs. Taylor for the sum of $750.

Several questions are presented in this appeal, but under the view we take of the case only one need be discussed—the correctness of the holding that Mrs. Taylor was personally liable on her contract. The proof shows that the contract was made in California, and was to be performed, in part at least, in that state. If this suit had been brought there her coverture would not have been a defense to an action for a personal judgment.

[1, 2] As a general rule the laws of the place where the contract is made, when different from those of the forum, control, not only in the construction of the contract, but in determining the nature and extent of the legal. obligations embraced in the contract. While the courts of one state are not under the dominion of the laws of another state, there is an unwritten rule of comity generally observed in giving effect to the lex loci contractus when different from the lex fori. That is done because it is generally the fair-

est way of arriving at and giving effect to the intention of the parties to the contract. That rule has, however, its exceptions. It will not be observed and applied when to enforce a foreign contract, according to the provisions of the foreign laws, will. contravene some established rule of public policy of the state of the forum. Union Trust Co. v. Grosman, 245 U. S. 412, 38 S. Ct. 147, 62 L. Ed. 368; 1 Wharton on Conflict of Laws (3d Ed.) 275.

[3, 4] We come, then, to the controlling inquiry—Would the enforcement of this California contract according to the laws of that state contravene any established rule of public policy in this state? The public policy of this state is to be found in the unwritten or common-law restrictions, as well as in its statutory limitations. The common law, except where altered by statute, is just as much a part of our local jurisprudence as are the enactments of the Legislature. It is, of course, conceded that under the common law, as recognized in this state, Mrs. Taylor could not be held personally liable upon her contracts. The only statutory modification of that limitation upon her powers is found in article 4624, Revised Civil Statutes (Vernon's Sayles' Ann. Civ. St. 1914), which is as follows:

"Neither the separate property of the husband nor the community property other than the personal earnings of the wife, and the income, rents and revenues from her separate property shall be subject to the payments of debts contracted by the wife, except those contracted for necessaries furnished her or her children."

Article 4629a provides that a married woman may, with the consent of her husband, apply to a district court of the county in which she resides for an order removing her disabilities of coverture, and thus acquire the rights of a feme sole for mercantile and trading purposes. Mrs. Taylor had not sought emancipation from the disabilities of coverture, and article 4624, quoted above, removes the common-law limitation. only as to· contracts for necessaries for herself and children. Red River Nat. Bank v. Ferguson, 109 Tex. 287, 206 S. W. 923.

[5, 6] What are commonly called the disabilities of coverture are not, in fact, civil disqualifications inherent in the female sex, nor are they a necessary or natural sequence to the assumption of the marriage relation. In the absence of some positive law to the contrary, the right of contract is ·a necessary incident to the right to own and hold property. The law does not prohibit a married woman from contracting. She commits no offense by making contracts, or by performing them. What the common law does is to relieve her of personal liability upon certain kinds of contracts which are binding on all others who are sui juris. The law does not

undertake to penalize her marriage, but to protect her after marriage from the usual legal consequences of her business engagements. Her contracts are not void, but only voidable. It is not the aim of the law to impose a burden, but to grant an immunity designed for her good. In the Ferguson Case cited above Chief Justice Phillips said:

"The limitations upon her authority are but the expression of a scrupulous concern for the preservation of her estate, and were imposed to that end. In that interest her authority to contract debts at all was confined to those essentially to her advantage, that is, for necessaries for herself or her children and the benefit of her estate, with a court, in all suits against her for such debts, charged with the duty of seeing that they were actually incurred for those purposes and were reasonable and proper."

[7] A regulation conferring the immunities of coverture on married women domiciled in this state will not be set aside by the courts of the state in order to give effect to opposing laws of another state simply because the contract was made in the other state. The contract of a married woman made in California is entitled to no higher respect by our courts than is given to the same character of contracts made in this state.

As announcing a contrary view, counsel for appellee refers to Merrielles v. State Bank of Keokuk, 5 Tex. Civ. App. 483, 24 S. W. 564, and Walker v. Goetz (Tex. Civ. App.) 218 S. W. 569. In the first case cited the suit was for a debt due upon several promissory notes executed by the husband and wife in the state of Iowa and payable in that state. Upon default in meeting payments when due, a suit was filed against the makers in the district court of Parker county, Tex. A writ of attachment was issued and levied upon a tract of land owned by Mrs. Merrielles and situated in that county. All of the parties resided in the state of Iowa at the time the suit was filed and when the judgment was rendered. Mrs. Merrielles and her husband answered, and among other defenses pleaded specially the coverture of the wife, and her exemption from personal liability on her contracts under the laws of Texas. The court held that under the facts presented the lex loci contractus should control in determining the issue of liability; and that, since her contract was binding under the laws of Iowa, it was enforceable in this state. In the second case, Walker v. Goetz, the facts are in all material respects strikingly similar. The parties to that suit resided in the state of Arizona. Walker and wife while residing there made a promissory note payable to Goetz. Under the laws of that state Mrs. Walker was personally bound for the payment of the note. She owned in her separate right a tract of land situated in Midland county, Tex., where this suit was filed. A writ of attachment was issued and levied on her land. Walker and wife answered, pleading coverture of Mrs. Walker, and invoking the immunity accorded to married women under the laws of Texas. The court followed the Merrielles Case, holding that the laws of Arizona should govern in determining the personal liability of Mrs. Walker.

It will be observed that in each of these cases the legal domicile of the husband and wife, both at the time the contract was made and the judgment rendered, was in a foreign state, whose laws allowed married women to contract as a feme sole. In each instance the situation presented was one in which a nonresident married woman was endeavoring to escape the laws of her domicile by invoking different laws of another state.

In this case the proof shows that the legal domicile of Mrs. Taylor and her husband was in Texas. At the time the contract was made they were temporarily in the state of California, expecting to return to their domicile at the termination of a business engagement. At the time this suit was filed they had returned and were residing in this state. It thus appears that during the entire period covered by this transaction Mrs. Taylor was a citizen of Texas. As such she is entitled to all the rights and immunities which the laws of Texas confer upon married women when within the confines of this state.

The importance of the distinction here alluded to is recognized and discussed in the case of Union Trust Co. v. Grosman, previously cited. That case originated in the United States District Court for the Northern District of Texas. The proof showed that Mrs. Grosman and her husband were citizens of Texas. While temporarily in the state of Illinois they jointly executed a contract, in which Mrs. Grosman became a surety for the firm of which her husband was a member. Under the laws of Illinois her contract was valid and enforceable. The principal question involved in the litigation which later began in Texas was, Should the lex loci contractus or the lex fori be applied in determining the question of the wife's personal liability? The trial court followed the general rule, and held that the lex loci contractus should control, and rendered a personal judgment against her. That judgment was on appeal reversed by the Circuit Court of Appeals (228 F. 610) in an opinion holding the contrary. The case ultimately found its way to the Supreme Court, which approved the holding of the Circuit Court of Appeals. Justice Holmes, who rendered the opinion of the Supreme Court, called attention to the fact that Mrs. Grosman had her domicile in the state of Texas, whose laws exempt her from personal liability upon contracts of that character, and concluded that, notwithstanding she was at the time she executed the contract in a state whose laws

made her liable thereon, nevertheless when sued in Texas she was entitled to claim the immunity accorded by the laws of this state. He thus stated his reasons for the ruling:

"The contact being a continuing one of uncertain duration, the plaintiff had notice that in case of a breach it probably might have to resort to the defendant's domicile for a remedy, as it did in fact. In such a case very possibly an Illinois court might decide that a woman could not lay hold of a temporary absence from her domicile to create remedies against her in that domicile that the law there did not allow her to create, and therefore that the contract was void. This has been held concerning a contract made with a more definite view to the disregard of the laws of a neighboring state."

He cites here Graves v. Johnson, 156 Mass. 211, 30 N. E. 818, 15 L. R. A. 834, 32 Am. St. Rep. 446. Continuing:

"But when the suit is brought in a court of the domicile there is no room for doubt. It is extravagant. to suppose that the courts of that place will help a married woman to make her property there liable in circumstances in which the local law says that it shall be free, simply by stepping across a state line long enough to contract. * * * There is nothing opposed to this view in those decisions in which the courts have enforced contracts of women domiciled where the law allowed such contracts to be made. It is one thing for a court to decline to be an instrument for depriving citizens belonging to the jurisdiction of their property in ways not intended by the law that governs them, another to deny its officers to enforce obligations good by the lex domicilii and the lex loci contractus against women that the local laws have no duty to protect."

Again he said:

"Texas legislation is on the background of an adoption of the common law. If the statutes have not gone so far as to enable a woman to bind her separate property or herself in order to secure her husband's debts, they prohibit it, and no argument can make it clearer that the policy of that state is opposed to such an obligation."

While the facts involved in the foregoing case were somewhat different from those here under consideration, the court announced the rule that, where a married woman's obligation is sought to be enforced in the courts of her domicile, her liability should be controlled by the laws of the domicile. The following cases, we think, support that conclusion: Hayden v. Stone, 13 R. I. 106; Armstrong v. Best, 112 N. C.' 59, 17 S. E. 14, 25 L. R. A. 188, 34 Am. St. Rep. 473; First Nat. Bank v. Shaw, 109 Tenn. 237, 70 S. W. 807; Spearman v. Ward, 114 Pa. 634, 8 A. 430; Smith v.' Ingram, 132 N. C. 959, 44 S. E. 643, 61 L. R. A. 878, 95 Am. St. Rep. 680; Nichols, etc., v. Marshall, 108 Iowa, 518, 79 N. W. 282. See, also, numerous cases cited in notes in 1 Wharton on Conflict of Laws (3d Ed.) pp. 279 et seq.

The fact that the contract of a married woman is only voidable, and not void when made, is of no importance in the decision of this question. If her contract is voidable only, she is not required to repudiate it until called upon to perform it. The proper time for the exercise of her option is usually when legal enforcement is sought. In this case Mrs. Taylor, at the proper time and in the proper manner interposed her plea of coverture, which was in legal effect a timely repudiation of her California contract.

We conclude that the court erred in rendering a personal judgment against Mrs. Taylor. Since no other liability could attach under the contract sued on, the judgment of the trial court will be reversed, and judgment here rendered in favor of the appellants.