**MASTERSON v. GINNERS' MUT. UNDERWRITERS' ASS'N OF TEXAS.**
**(No. 2215.)**

(Court of Civil Appeals of Texas. Texarkana. May 14, 1920. Rehearing Denied May 20, 1920.)

1. **Mortgages ⟨⟩497(2)—Foreclosure of senior mortgage with no notice of junior mortgage bars rights of junior mortgage.**

The foreclosure of a lien on land at the suit of the senior mortgagee who did not have notice of the right in the owner of the junior mortgage in the property bars such right, notwithstanding the junior mortgagee was not a party to the foreclosure suit.

2. **Bills and notes ⟨⟩350—Transferee after maturity held to have no greater rights than transferror.**

If pledgee of pledgor's notes payable to bearer, and deed of trust to secure notes, was bound by foreclosure of a senior mortgage, subsequent holder who took notes after maturity with notice of nature of transaction between pledgor and pledgee and of senior mortgagee's claim to land as foreclosure sale purchaser was also bound thereby, since such holder could not assert a right which pledgee could not assert.

3. **Mortgages ⟨⟩427(2)—Mortgagee held not chargeable with facts not shown by record of junior deed of trust and holder thereof not necessary party to foreclosure proceedings.**

Where notes payable to bearer secured by deed of trust were deposited with maker's creditor as security for debt, senior mortgagee with no actual notice thereof was not chargeable with constructive notice requiring it to make such creditor a party to foreclosure proceedings, though deed of trust was of record, and though by inquiry it could have ascertained such facts.

4. **Mortgages ⟨⟩1—Existence of debt necessary.**

The existence of a debt is indispensable to existence of a mortgage.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Mortgages ☞224—Purchaser of mortgage apart from debt takes nothing.**

Where debtor deposited his notes payable to bearer and secured by deed of trust with creditor as collateral for payment of his debt, purchaser of the notes and trust deed after maturity with knowledge of such facts took nothing by his purchase, since an assignment of the mortgage alone without the debt is nugatory and confers no right whatever upon assignee.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Suit by the Ginners' Mutual Underwriters' Association of Texas against N. T. Masterson and others. From judgment rendered, the named defendant appeals. Affirmed as reformed.

This was a suit by appellee against T. N. Jones, N. T. Masterson, and J. E. Winfrey on facts substantially as follows:

January 25, 1912, said Jones made and delivered to appellee 11 promissory notes, each of them being for $1,000, interest and attorney's fees, payable to appellee or order, the first of them on or before January 15, 1914, and one of the others on or before January 15 of each of the ten years next following said year 1914. Each of the notes contained a stipulation that a failure to pay it when it matured should, at the option of the holder, operate to mature the other not then due. At the time Jones made the notes he executed and delivered a deed whereby he conveyed certain land to Dabney White as trustee to secure the payment of the notes.

February 10, 1913, Jones executed 10 notes, bearing that date, each for $1,000, interest and attorney's fees, payable to "bearer" on or before February 10, 1918, and to secure the payment of the notes (it was recited in the instrument) executed a deed, also dated said February 10, 1913, whereby he conveyed to W. H. Marsh, as trustee, the land he had before conveyed to White as trustee. The deed to Marsh was duly recorded March 4, 1913. The 10 notes just mentioned did not at the time they were made, or ever afterward, represent an indebtedness of Jones to any one.

February 27, 1913, Jones made and delivered to the Harris Lumber Company a promissory note, bearing that date, for $1,000, interest and attorney's fees, payable to the order of said lumber company October 1, 1913. Attached to this note was an instrument executed by Jones, referred to in the record as a "collateral agreement," in which it was recited that the 10 notes to "bearer," secured by the trust deed to Marsh, had been deposited with the lumber company as collateral security for said $1,000 note made to it by Jones. By said instrument Jones authorized the lumber company "to collect said collateral when due, crediting the proceeds thereof on the foregoing note," and in case of default "in the payment of the foregoing note

at maturity" "to sell said security with or without notice, at public or private sale."

Jones having defaulted in the payment of the 2 notes which first matured of the 11 he made to appellee, the latter declared all of them due, and on October 15, 1915, in a suit against Jones alone, recovered judgment for the amount of the notes, to wit, $12,298.40, and foreclosing the lien of the deed to White on the land conveyed to him as trustee. January 4, 1916, the land was sold by virtue of process issued on the judgment. Appellee was the purchaser at the sale, and the sheriff by deed dated said January 4, 1916, conveyed the land to him. At the time it commenced said suit and at the time it purchased the land at its foreclosure sale appellee had no actual notice or knowledge of the existence of the 10 notes made by Jones to bearer or of the trust deed made by Jones to Marsh to secure same.

The note for $1,000 dated February 27, 1913, to the Harris Lumber Company, was renewed by Jones September 21, 1917. No part of it had been paid December 31, 1918, when the lumber company at Dallas agreed with H. Masterson at Houston to sell the note to him and to deliver to him with it the 10 notes made by Jones to bearer, together with the collateral agreement, deposited with it (the lumber company) as collateral security. The papers were accordingly sent through a Dallas bank to a Houston bank, where they were delivered to said H. Masterson January 2, 1919, he then paying to the Houston bank for the lumber company the sum he had agreed to pay therefor. On the next day thereafter, to wit, January 3, 1919, H. Masterson, by authority of the collateral agreement before referred to, sold the collateral notes (that is, the 10 notes made by Jones to "bearer") to appellant for $1,000, and indorsed the amount as a credit on the principal note (that is, the note for $1,000 made by Jones to the lumber company). At the time H. Masterson paid for the principal note and received it and the collateral notes he knew that appellee had foreclosed its lien on and was in possession of the land, claiming to own it, and also knew that Jones was never indebted to the lumber company except for the amount of the principal note, to wit, $1,000, and 10 per cent. interest thereon from February 27, 1913.

W. H. Marsh, the trustee named in the deed of trust made by Jones February 10, 1913, died September 29, 1916. January 4, 1919, appellant, as the owner and holder of the 10 notes made by Jones to bearer, in writing appointed J. E. Winfrey to act as trustee under the deed, and thereupon Winfrey, as such trustee, at appellant's request advertised the land for sale on the first Tuesday in February, 1919. This suit was commenced January 30, 1919. By it appellee sought: (1) To enjoin a sale of the land by

virtue of the trust deed to Marsh; (2) to cancel said trust deed and the notes it was made to secure, on the ground that same were a cloud on its title to the land; (3) if the court thought that should not be done, and that appellant had a lien on the land to secure the payment of the principal note made by Jones to the lumber company, to be permitted to pay the amount thereof to appellant, and so bar the lien; (4) or, if the court thought that appellant had a lien on the land to secure the payment of the 10 notes made by Jones to bearer, to have its (appellee's) lien thereon to secure the payment of Jones' notes to it foreclosed and declared to be a prior lien on the land; that the land be sold, and that the proceeds be applied to the payment of Jones' indebtedness to it and the amount it had expended for taxes and improvements on the land, before any part of same was paid to appellant. Appellant in his pleadings tendered to appellee the amount of the 11 notes Jones made to it, and sought, if the tender was declined, a recovery against Jones of the amount of the 10 $1,000 notes he made to "bearer" and a foreclosure of the trust deed to Marsh made to secure them.

The appeal is by appellant, N. T. Masterson, alone from a judgment in his favor against Jones for $1,792.84, the amount of the note for $1,000 made by Jones to the lumber company February 27, 1913, and foreclosing the lien of the trust deed to Marsh on the land in question, directing a sale thereof by the sheriff, and directing that the proceeds of such sale be applied: First, to the payment of the judgment recovered by appellee against Jones October 15, 1915; second, to the payment of said $1,792.84 adjudged in favor of appellant against Jones; third, to the payment of the costs of this suit; and, fourth, the balance remaining, if any, to be paid to appellee. But it was provided in the judgment that the sale of the land ordered should not be made if appellee should pay to appellant the $1,792.84 and interest adjudged in his favor. The judgment canceled the 10 notes made by Jones to bearer and the trust deed he made to Marsh, "except," it was recited, "as herein provided," and perpetuated a temporary injunction granted to restrain the sale of the land by virtue of said trust deed to Marsh.

Simpson, Lasseter & Gentry, of Tyler, for appellant.

Marsh & McIlwane, of Tyler, for appellee.

WILLSON, C. J. (after stating the facts as above). Appellant attacks the judgment as erroneous because it is not in his favor for the amount of the 10 notes for $1,000 each deposited with the Harris Lumber Company as collateral security, and for a foreclosure of the trust deed to Marsh, instead of for the amount of the principal note for $1,000 made by Jones to said lumber company. Appellee, in cross-assignments, attacks as erroneous, because without the support of testimony, it says, the finding that it was chargeable with notice of the rights of the owner of indebtedness secured by the trust deed to Marsh at the time it commenced its foreclosure suit against Jones and at the time it purchased the land under the judgment in its favor in said suit, and on the ground that it did not have and was not chargeable with such notice, and on the ground that "there were no pleadings nor facts" authorizing it, attacks the judgment as erroneous in so far as it awarded appellant a foreclosure of the trust deed on said land for any amount.

In the view we take of the case, a determination of the contentions presented by the cross-assignments referred to will dispose of the appeal.

[1] It seems to be the law that the foreclosure of a lien on land at the suit of the senior mortgagee who did not have notice of the right in the owner of the junior mortgage in the property bars such right, notwithstanding the junior mortgagee was not a party to the foreclosure suit. 2 Jones on Mortgages, § 1425; Rogers v. Houston, 94 Tex. 403, 60 S. W. 869; Reel v. Wilson, 64 Iowa, 13, 19 N. W. 814; Henderson v. Grammar, 66 Cal. 332, 5 Pac. 488.

[2] It appears from the record that appellee, as a matter of fact, did not know of the existence of the deed of trust to Marsh at the time it commenced its foreclosure suit against Jones, not, indeed, until June 7, 1917, which was long after the time when the land was conveyed to it as the purchaser at the sale thereof made by the sheriff as directed by the judgment in said foreclosure suit. Therefore, unless the record of said trust deed of March 3, 1913, operated to charge appellee with notice that the lumber company had acquired a right in the land, appellee was not bound to make that company a party to its foreclosure suit in order to bar such right. If the lumber company was bound by that judgment, of course appellant was; for he, as well as his assignor, H. Masterson, acquired the collateral notes and trust deed long after said notes matured and with full notice of the nature of the transaction between Jones and the lumber company and of appellee's claim to the land as the purchaser thereof at the sale under the judgment in its foreclosure suit. Therefore appellant was not in a more favorable position than the lumber company was in, and as the holder of the collateral notes could not assert a right it could not have asserted.

Finding, in accordance with the statement hereinbefore made, that appellee had no actual notice of the existence of the collateral notes and trust deed to Marsh until June 7, 1917, the trial court further found that the record of the deed operated to charge appellee with constructive notice—

"that Jones had executed his 10 promissory notes of $1,000 each payable to bearer, and to secure said notes he had executed a deed of trust upon the land, naming W. B. Marsh, of Tyler, Tex., trustee in the mortgage."

Unquestionably, we think, the record was notice of that much, and we do not understand appellee to be in the attitude of contending to the contrary; but the court further found, and appellee attacks the finding as without support in law, that the effect of the record and recitals referred to was to put appellee on inquiry and to charge it with notice of the existence of such other relevant facts as inquiry pursued with proper diligence would have disclosed.

"From these facts," said the court, "that is, the execution of the notes and deed of trust, and causing same to be recorded in the record provided by law for record of such instruments, it would be presumed that the notes had in some way gone into the channels of trade, and a lien had become fixed. To hold otherwise would be to assume that the entire proceedings were for no purpose and not intended for what they speak. With this information given by the record, a reasonable inquiry of either Jones, the maker of the notes, or of Marsh, the trustee, would have disclosed the fact that the notes were held by the Harris Lumber Company."

[3] As supporting his view of the law, the court cited Wilkerson v. Ward, 137 S. W. 159. In that case Ward claimed under a deed from Miles made in 1888, and duly recorded, in which the land was described as block 49, containing lots numbered 1 to 20, inclusive, in the Jonathan Miles First addition to San Angelo, and Wilkerson claimed under a deed from Miles made in 1908, in which the land was described with reference to streets in said addition. The court of civil appeals held Wilkerson to be chargeable with notice that the land Miles sold him was the same land he had conveyed to Ward. If the case is not within a qualification of the general rule announced in Carter v. Hawkins, 62 Tex. 393, it is opposed to the doctrine recognized in this state by the Supreme Court. The general rule and the qualification was stated by Chief Justice Phillips in Wiseman v. Waters (Sup.) 174 S. W. 816, as follows:

"The general rule that under the doctrine of constructive notice there is imputed to the subsequent purchaser or incumbrancer notice only of that which appears on the face of the recorded instrument, and that where there is substantial discrepancy between the property intended to be conveyed or mortgaged and that described in the instrument, the record will not operate as notice, is subject to the qualification that where the description in the instrument is ambiguous, inconsistent in its parts, or correct in one particular and false in another, the record is such as to naturally excite inquiry, and under such circumstances it therefore becomes the duty of the subsequent purchaser or incumbrancer to make inquiry for the purpose of ascertaining what property was actually the subject of the instrument."

And in discussing the question further the Chief Justice added:

"With the qualification announced in Carter v. Hawkins, the rule is established, at least in this state and in others, that the record of instruments provided or permitted by law to be recorded operates as notice only of the facts actually exhibited by the record, and not those which might have been ascertained by such inquiries as an examination of the record might have induced a prudent man to make" citing numerous authorities, to which may be added Adams v. Lumber Co., 162 S. W. 974.

The reason for the distinction between the effect of constructive and actual notice appears in the statement of the Supreme Court of Minnesota in Bailey v. Galpin, 40 Minn. 319, 41 N. W. 1054, as follows:

"Constructive notice of the contents of a deed arises as an inference or presumption of law from the mere fact of record, and is in law equivalent to actual notice of what appears upon the face of the record to the party bound to search for it, whether he has seen or known of it or not; that is, constructive notice under the recording acts may bind the title, but does not bind the conscience; while actual notice binds the conscience of the party."

If, as seems to be true by force of the rule in question, appellee was chargeable with notice only of facts recited in the trust deed to Marsh, and not with notice of the existence of facts which inquiry suggested by recitals in the deed if diligently pursued would have disclosed, we see no way of escape from the conclusion that it was not bound to make the Harris Lumber Company a party to its foreclosure suit in order to bar its right to enforce the lien it claimed on the land; for appellee did not otherwise know and it was not informed by anything in the trust deed who was the owner of the debt it was made to secure. Appellee could not have made the owner of the debt a party to its suit without first identifying him, and he could have done that only by making inquiry he was not bound to make.

The operation of the rule cannot be regarded as unfair or inequitable in this case, in view of the fact that the notice appellee had of the lumber company's claim on the land was presumptive only, and not actual so as to be "binding on its conscience," and in view of the fact that the lumber company, by taking from Jones and placing of record proper evidence of its claim, could have charged appellee with notice thereof and compelled it, in order to bar its rights, to make it a party to any foreclosure suit it brought. Rogers v. Houston, 94 Tex. 403, 60 S. W. 869; Gamble v. Martin, 151 S. W. 327.

[4] If, however, the conclusion reached by us that the right of the holder of the note for $1,000 made by Jones to the lumber company

to look to the land as security for the payment thereof was cut off by the judgment in appellee's foreclosure suit was shown to be erroneous, the conviction we have as to the disposition which should be made of the appeal would remain unchanged; for we think the contention of appellee that the judgment was not warranted by the pleadings and the evidence in other particulars so far as it was in appellant's favor for a foreclosure of the lien he claimed on the land also should be sustained. It is clear that the only effect as between Jones and the lumber company of the delivery by the former to the latter of the 10 $1,000 notes and the deed of trust to Marsh was to create a lien on the land to secure the note for $1,000 made by Jones to the lumber company. As between those parties the transaction could not have had any other effect; for the 10 notes did not represent indebtedness of Jones to the lumber company or to any one else. Jones owed the lumber company only the amount of the note for $1,000 he made to it February 27, 1913, and, so far as the record shows to the contrary, owed no other debts except the one to appellee. Therefore, unless the transaction by which Jones passed the 10 notes and the trust deed to Marsh to the lumber company operated as stated, it did not operate at all as between said parties, but was a nullity; for there was no other debt to be secured by it, and the existence of a debt (or other obligation, and there was no pretense in this case that there was any other obligation) is indispensable to the existence of a mortgage. Carroll v. Tomlinson, 192 Ill. 398, 61 N. E. 484, 85 Am. St. Rep. 344; Richards Trust Co. v. Rhomberg, 19 S. D. 595, 104 N. W. 268; 19 R. C. L. 294, and authorities there cited. In the work last referred to it is said:

"Since a conveyance cannot be a mortgage unless given to secure the performance of an obligation, the existence of an obligation to be secured is an essential element without which the mortgage instrument is but a shadow without substance."

[5] If such was the effect of the notes and trust deed as between Jones and the lumber company, such was the effect thereof as between Jones and H. Masterson; for, taking the papers as he did after the maturity thereof with full knowledge of all the facts relating thereto, said H. Masterson, as the holder thereof, had the rights, and only the rights, the lumber company had while it held same; in other words, H. Masterson could look to the land described in the trust deed as security (not for the amount of the 10 $1,000 notes to bearer, but) only for the amount of the $1,000 note to the lumber company. It was on that theory, it seems, and the theory that N. T. Masterson by his purchase of the 10 $1,000 notes made by Jones to bearer became the owner of Jones' debt

to the lumber company, that the court below rendered the judgment he did in appellant's favor. But appellant in his pleadings did not seek a recovery as the owner of the note, or of an interest therein, made by Jones to the lumber company. The recovery he sought was on account of and as the owner of the 10 $1,000 notes made by Jones to bearer. And the testimony was that H. Masterson intended to sell and appellant intended to buy those notes, and not the note nor an interest in it made to the lumber company; in other words, it appeared from both the pleadings and the testimony that the thing H. Masterson intended to sell and appellant intended to buy was what we have held operated as between Jones and the lumber company and Jones and H. Masterson as a mortgage only. And we do not think the 10 notes to bearer and the trust deed to Marsh operated differently in favor of appellant, for he purchased same after the notes matured and with knowledge of the facts shown by the collateral agreement under which the lumber company, and after it H. Masterson, held same. He purchased paper he was bound to know was only a mortgage, and, for anything appearing to the contrary in the record before us, took nothing by his purchase; for the rule is that—

"An assignment of the mortgage alone, without the debt, is nugatory and confers no right whatever upon the assignee." 27 Cyc. 1286, and authorities there cited.

The judgment, so far as it awards appellant a foreclosure of the trust deed to Marsh and directs a sale of the land therein described, will be so reformed as to deny him such relief, and, as so reformed, will be affirmed.