## MASTERSON v. GINNERS MUT. UNDER-WRITERS' ASS'N OF TEXAS.
(No. 281–3524.)

(Commission of Appeals of Texas, Section A. Jan. 4, 1922.)

1. Appeal and error ⬤➡1083(3)—Determination of Court of Civil Appeals that a party had no actual notice of a transaction reviewable as a matter of law.

Where the Court of Civil Appeals found that a party had no actual notice of certain transactions, and that the record of a deed of trust was not sufficient to put such party upon notice of a certain note, such question will be passed upon by the Commission of Appeals as a matter of law.

2. Bills and notes ⬤➡153—"Bearer" paper is negotiable.

Notes secured by a mortgage deed of trust and payable to bearer *held* negotiable when uttered; "bearer" being a sufficient designation of a payee as well as all subsequent holders.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bearer.]

3. Mortgages ⬤➡497(2)—Where assignment of mortgage notes payable to bearer was unrecorded, assignee bound by foreclosure of a prior mortgage to which assignor, but not assignee, was party.

Where the assignment to defendant of bearer notes secured by a recorded deed of trust was not recorded, and the maker of the notes, the only party interested in the notes apparent of record, was made a party defendant in suit by plaintiff to foreclose its lien on the land, not only such maker, but also, through him, defendant, was concluded by the judgment in the foreclosure action; the plaintiff not being obliged to go beyond the record in ascertaining the proper parties defendant.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit by the Ginners' Mutual Underwriters' Association of Texas against N. T. Masterson and others. On appeal by the named defendant from the judgment rendered it was by the Court of Civil Appeals affirmed as reformed (222 S. W. 263), and the named defendant brings error. Affirmed.

Elliott Cage, of Houston, and Simpson, Lasseter & Gentry, of Tyler, for plaintiff in error.

Marsh & McIlwaine and T. N. Jones, all of Tyler, for defendant in error.

RANDOLPH, J. In this opinion the defendant, N. T. Masterson, plaintiff in error herein, will be referred to as defendant Masterson, and the defendant in error will be referred to as the association.

The following statement of the case is substantially the statement of the Court of Civil Appeals, with such additions as we deem necessary to a full understanding of the rulings made:

This suit was filed by the association against T. N. Jones, N. T. Masterson, and J. E. Winfrey. On January 25, 1912, Jones made and delivered to the association 11 promissory notes for $1,000 each, bearing interest, and providing for attorney's fees, the first payable to the order of the association, on or before January 15, 1914, and one each year thereafter on the 15th of each January for 10 years following said year 1914, and each containing stipulations that a failure to pay the note at their maturity should at the option of the holder mature the others, and at the same time Jones executed and delivered a deed of trust conveying the land in controversy to Dabney White as trustee to secure the payment of the notes.

February 10, 1913, Jones executed 10 notes of that date, each for $1,000, interest and attorney's fees, payable to "bearer" on or before February 10, 1918, and as security therefor executed a deed of trust of that date, conveying to W. H. Marsh, as trustee, the same land that he had before conveyed to White as trustee. There is no question of proper record of the instruments raised in this case.

February 27, 1913, Jones executed and delivered to the Harris Lumber Company a promissory note of that date for $1,000, interest and attorney's fees, payable to the order of the lumber company October 1, 1913. Attached to this note was an instrument executed by Jones, referred to in the record as a "collateral agreement," in which it was re-

cited that the 10 notes to "bearer" secured by the trust deed to Marsh had been deposited with the lumber company as collateral security for the $1,000 note made to it by Jones. By the last-named instrument Jones authorized the lumber company to collect the collateral when due, crediting the proceeds thereof on the attached or foregoing note, and, in case of default in the payment of the $1,000 note at maturity, authorizing the company to sell the security with or without notice at public or private sale.

Jones having defaulted in the payment of the two notes which first matured of the 11 he made to the association, the latter declared all of them due, and on October 15, 1915, in a suit against Jones alone, recovered judgment for the amount of the notes in the sum of $12,298.40, and foreclosing the lien of the deed of trust to White on the land conveyed to him, as trustee, herein in controversy. January 4, 1916, the land was sold by virtue of process issued on that judgment. The association became the purchaser at the sale, and the sheriff by deed dated January 4, 1916, conveyed the land to it. The Court of Civil Appeals finds that at the time it commenced the above suit and at the time it purchased the land at its foreclosure sale the association had no actual notice or knowledge of the existence of the 10 notes made by Jones to bearer or of the trust deed made by Jones to Marsh to secure the payment of same.

The note for $1,000 dated February 27, 1913, to the Harris Lumber Company, was renewed by Jones September 21, 1917. No part of it had been paid December 30, 1918, when the lumber company at Dallas agreed with H. Masterson at Houston to sell the note to him and to deliver to him with it the 10 notes by Jones to bearer, together with the collateral agreement deposited with the lumber company as collateral security.

The papers were accordingly sent to a Houston bank, where they were delivered to H. Masterson January 2, 1919, he then paying to the Houston bank for the lumber company the sum he had agreed to pay therefor. On the next day thereafter, to wit, January 3, 1919, H. Masterson, by authority of the collateral agreement before referred to, sold the collateral notes (that is, the 10 notes made by Jones to bearer) to defendant Masterson for $1,000, and indorsed the amount as a credit on the principal note (that is, the note for $1,000 made by Jones to the lumber company). At the time H. Masterson paid for the principal note and received it and the collateral notes he knew that the association had foreclosed its lien on and was in possession of the land, claiming to own it, and also knew that Jones was never indebted to the lumber company except for the amount of the principal note, to wit, $1,000 and 10 per cent. interest thereon from February 27, 1913.

W. H. Marsh, the trustee named in the deed of trust made by Jones February 10, 1913, died September 29, 1916. January 4, 1919, defendant Masterson, as the owner and holder of the 10 notes made by Jones to bearer, in writing, appointed J. E. Winfrey to act as trustee under the deed, and thereupon Winfrey, as such trustee, at defendant Masterson's request, advertised the land for sale on the first Tuesday in February, 1919. This suit was commenced January 30, 1919. By it the association sought: (1) To enjoin a sale of the land by virtue of the trust deed to Marsh; (2) to cancel the deed of trust and the notes it was made to secure, on the ground that same were a cloud on its title to the land; (3) if the court thought that should not be done, and that defendant Masterson had a lien on the land to secure the payment of the principal note made by Jones to the lumber company, they requested to be permitted to pay the amount thereof to defendant Masterson and so bar the lien; (4) or if the court thought defendant Masterson had a lien on the land to secure the payment of the 10 notes made by Jones to bearer, to have its (the association's) lien thereon to secure the payment of Jones' note to it foreclosed and declared to be a prior lien on the land; that the land be sold and the proceeds be applied to the payment of Jones' indebtedness to it, and the amount it had expended for taxes and improvements on the land before any part of same was paid to defendant Masterson. Defendant Masterson in his pleading tendered to the association the amount of the 11 notes Jones made to it, and sought if the tender was declined a recovery against Jones of the amount of the 10 $1,000 notes he made to "bearer" and a foreclosure of the deed of trust to Marsh made to secure them.

The appeal to the Court of Civil Appeals was by defendant Masterson alone from a judgment in his favor against Jones for $1,792.84, the amount of the note for $1,000 made by Jones to the lumber company February 27, 1913, and foreclosing the lien of the deed of trust to Marsh on the land in controversy, directing a sale thereof by the sheriff, and directing that the proceeds of such sale be applied: (1) To the payment of the judgment recovered by the association against Jones October 15, 1915; (2) to the payment of the sum of $1,792.84 adjudged in favor of defendant Masterson against Jones; (3) to the payment of the costs of this suit; and (4) the balance remaining, if any, to be paid to the association. But it was provided by the judgment that the sale of the land ordered should not be made if the association should pay to defendant Masterson the $1,792.84 and interest adjudged in his favor.

The judgment canceled the 10 notes made by Jones to bearer and the deed of trust be made to Marsh, "except" it was recited, "as herein provided," and perpetuated a temporary injunction granted to restrain the sale of the land by virtue of said trust deed to Marsh. From this judgment defendant Masterson appealed to the honorable Court of Civil Appeals for the Sixth Supreme Judicial District. That court set aside the judgment rendered by the trial court, and rendered judgment granting the association a recovery of the land in controversy free of defendant Masterson's claim of lien, and denied him (defendant Masterson) any relief. 222 S. W. 263.

In order to justify the judgment of the Court of Civil Appeals we must hold that the record of the Marsh deed of trust was not constructive notice of any fact which would have put the association on inquiry, which inquiry, if pursued with ordinary intelligence and diligence, would have led to a knowledge of the fact that the Marsh deed of trust and the 10 notes payable to bearer were hypothecated with the lumber company as collateral security for its $1,000 note, or that the pleadings of defendant Masterson did not warrant the recovery by him of a judgment for any sum of money.

The association having foreclosed the deed of trust given to it by Jones and become the owner of the property in controversy under the sale thereunder, it takes the position that such foreclosure extinguished the lien claimed to exist in his favor by defendant Masterson under the Marsh deed of trust, because it had no actual notice of the existence of that instrument, the notes secured by it, or of the Harris Lumber Company's note, and that the record of the Marsh deed of trust was not constructive notice of the fact that the 10 notes and the Marsh deed of trust had been pledged as collateral for the lumber company's note for $1,000.

[1] The Court of Civil Appeals found that the association had no actual notice of the transactions, and, that court having held that the record of the Marsh deed of trust was not sufficient to put the association upon notice of the lumber company's note, we shall pass upon that question as a matter of law. Love v. Breedlove, 75 Tex. 652, 13 S. W. 222.

Justice Wheeler in the case of Briscoe v. Bronaugh, 1 Tex. 333, 46 Am. Dec. 108, discussing what shall constitute notice, says:

"It is, perhaps, impossible to lay down definite rules as to what facts shall be deemed proof of constructive notice in every case, 'for it must depend upon the infinitely varied circumstances of each case.' 4 Kent. 179."

[2] The notes secured by the mortgage deed of trust, 10 in number, were payable to bearer, and were negotiable when uttered; "bearer" being a sufficient designation of a payee, as well as all subsequent holders. 7 Cyc. 560.

[3] The record of the deed of trust gave notice only of what that record showed. The disclosure made by the record was tantamount to a declaration that a lien was placed on record to secure the 10 notes in Jones' possession, for there was nothing in that record which gave any notice that the notes had been transferred by Jones. This being true, Jones, the only party interested in the note apparent of record, having been made a party defendant in the suit brought by the association to foreclose its lien, was concluded by that judgment, and through him all subsequent holders with notice were also concluded.

It could not be held that under the circumstances the association should have been compelled to take notice that the notes were owned by the lumber company as collateral. There were 10 of these notes, and each one of them could have passed from bearer to bearer by mere delivery. It would have placed on the association an impossible burden to have required that they take notice of all possible holders of these 10 notes in order to drive them to the knowledge that they were in the hands of the lumber company as security for its debt.

In the case of Rogers v. Houston, 94 Tex. 404, 60 S. W. 870, in answer to certified questions, the Supreme Court, in an opinion by Justice Brown, holds that a judgment of foreclosure against parties to the record extinguished the lien of a purchaser of a vendor's lien note who had failed to place on the record evidence of the transfer to him of one of the notes purchased by him from a subsequent vendor, and the court holds:

"This reduces the question to the proposition that Rogers was required to go beyond the record and ascertain whether Brown had transferred the note before the suit of foreclosure was instituted. This is practically the contention of the appellee in this case, supported by the opinion of the majority of the Court of Civil Appeals. In the case of Moran v. Wheeler, 87 Tex. 179, very much the same question was presented, and this court held in effect that the subsequent mortgagee, who virtually occupied the same position that Rogers does, had the right to rely upon the record, and was not required to inquire into the existence of a transfer not known to him by which the lien upon the land had been passed to another who had neglected to care for his own rights by placing his transfer upon the records. Reel v. Wilson, 64 Iowa, 13; Leonard v. Bay Co., 28 N. J. Eq. 192; Woods v. Love, 27 Mich. 308; Aldrich v. Stephens, 49 Cal. 676; Kipp v. Brandt, 49 How. Prac. (N. Y.) 358.

In the case of Reel v. Wilson, suit was brought to redeem a tract of land upon which

a prior mortgage had been foreclosed upon the ground that the plaintiff had not been made a party to the foreclosure suit. The facts were that the junior mortgage which the plaintiff asserted had been assigned to him by the mortgagee therein, but the assignment was not placed of record, and the plaintiff in the foreclosure suit, acting upon the title as it was shown by the record, made the mortgagee in the junior mortgage a party defendant. It was asserted in that case as in this that the record showed that the mortgage existed, and that it was the duty of the plaintiff in the foreclosure suit to ascertain to whom that debt and mortgage then belonged. The court said: 'Under this state of facts, we think that the decree in Benedict's foreclosure left plaintiff no right of redemption, except such as was conferred upon him by statute. To hold otherwise would have required Benedict to go beyond the records and, out into the world in search of the owners of the notes secured by the Perry mortgage, and, after having found them, to make them parties defendant. Such a holding would not comport with the object and purposes of the statute providing for the record of instruments affecting real estate. If Reel had caused an assignment of the mortgage to be made of record, it would have been notice to the world of his rights, and because of this provision of the law Benedict was not required to search beyond the record for incumbrances.' This extract clearly and accurately states the law applicable to this case. Rogers had the right to rely upon the record, and was not required to institute search for the note which appeared to belong to a party to the judgment under which he bought. By his purchase Rogers acquired the legal title to the land, and before plaintiff could assert his equitable right to redeem he must show that Rogers had notice of the right, or that he knew such facts as would put him upon inquiry. Barnes v. Jamison, 24 Tex. 362; Baldwin v. Root, 90 Tex. 552."

In this case there was no transfer of the lien from Jones to the lumber company placed of record giving notice of the lumber company's relation to the notes and Marsh's deed of trust. We therefore hold that the record of the Marsh deed of trust did not contain any recitals which would lead the association by the exercise of ordinary prudence and diligence to have discovered that the 10 notes and Marsh's deed of trust were placed as collateral security for the lumber company's note.

This holding makes it unnecessary for us to pass upon the question of the sufficiency of the pleadings of defendant.

We therefore recommend that the judgment of the honorable Court of Civil Appeals in this case be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.