Reyes E. JARAMILLO and Lucy Jaramillo, Plaintiffs,

v.

Don McLOY, Charles W. Kilgore, Jr., Louis Given, and Frank L. Romero, as Public Trustee of Conejos County, Colorado, Defendants.

Civ. A. No. 66–C–15.

United States District Court
D. Colorado.

Feb. 8, 1967.

John Ira Green, Alamosa, Colo., for plaintiffs, Downing & Knowlton, Denver, Colo., for defendant Don McLoy.

Atler, Haligman & Atler, Denver, Colo., for defendant Charles W. Kilgore, Jr.

Holland & Hart, Denver, Colo., for defendant Louis Given.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

This case was tried to the Court. It is an effort on the part of the plaintiffs to remove a cloud on the title to certain real estate located in Conejos County, Colorado. The demand is for cancellation of a deed of trust which has already been foreclosed in Public Trustee proceedings. Plaintiffs also demand damages in the amount of $5.000.00 on the theory of slander of title involving the same real estate.

The plaintiffs are the owners of approximately 1,600 acres of unencumbered land in Conejos County, Colorado. This land has been used to pasture sheep and has not been cleared and does not have timber. It is grass land on which pinon trees and sagebrush grow. On the dates in question the property was subject to a mortgage to the Federal Land Bank.

In essence, the controversy centers around conveyances by the plaintiffs to Don McLoy and Charles Kilgore, Jr., which conveyances were made as part of a promotion development and a subdivision scheme. An undivided one-third interest was conveyed to Kilgore and McLoy. No money passed to the plaintiffs in connection with these conveyances; however, there were conditions which accompanied the conveyances—the defendants McLoy and Kilgore undertook to make certain improvements and to subdivide and to sell five-acre tracts. The difficulty arose when Kilgore, without authority from plaintiffs, conveyed his one-third interest to the defendant Louis Given as security for an undertaking by Given on Kilgore's behalf.

When plaintiffs learned of this the land promotion scheme came to an abrupt halt and Kilgore and McLoy, who had held executed quit claim deeds to the plaintiffs, delivered them. Meanwhile, however, the mortgage of Given was recorded and later it was foreclosed.

Prior to September 20, 1962, Kilgore and McLoy approached the plaintiffs and presented to them a plan calling for the subdividing of their 1,600 acres of pasture land into small five-acre tracts for building sites. The parties entered into a joint venture contract which provided that the land would be subdivided into five-acre tracts and sold to purchasers. Plaintiffs were to furnish the land and McLoy and Kilgore were to build the road, improve and develop the land, and promote the sale of the five-acre tracts to the public. The conveyances to Kilgore and McLoy were in connection with and subject to the carrying out of the promotion plan. Contemporaneous with the recording of the one-third interest and the execution of the deeds to Kilgore and McLoy, the latter executed quit claim deeds to the plaintiffs. The agreement provided for the re-conveyance of the same one-third interest in the lands conveyed. The understanding was that these latter deeds were to be placed in escrow and were to be delivered to the plaintiffs in the event that the land promotion scheme was not carried out. It turned out, however, that these deeds were not placed in escrow because the bank would not accept them. Kilgore and McLoy undertook to sell fifty five-acre tracts within one year after September 20, 1962. If they failed to sell this number of tracts the quit claim deeds to the plaintiffs were to be delivered.

The promotion plans did not work out. Only twelve installment contracts were sold to purchasers, but meanwhile Kilgore gave the mortgage which is here in question, to Louis Given. This mortgage was the result of the following circumstances:

Both Kilgore and McLoy were residents of El Paso, Texas. Prior to the

described transaction Kilgore had undertaken to perform a contract on the airfield at El Paso, Texas. As part of that he was required to furnish a Bid and Performance Bond. In order to obtain this bond the surety company required that he obtain a guarantor. Louis Given, a retired El Paso, Texas, businessman, agreed to so act. Kilgore in turn offered to pay him twenty-five per cent of the profits on the airport job for signing the bond as a guarantor. Kilgore came out short on the performance of his contract and there were outstanding debts amounting to some $11,000.00 which were owed on the completion of the contract to his suppliers and materialmen. In view of their liability to the bonding company, Kilgore and Given borrowed the necessary funds, the sum of $11,225.00 from the Coronado State Bank of El Paso, Texas. Kilgore signed this note as the maker and Given endorsed the note. The date of this transaction was March 5, 1953. The money obtained from the bank was used to pay off the subcontractors and the materialmen. On the same dates Kilgore executed his note to Given in the same amount. To secure this he gave his deed of trust to Given conveying the one-third undivided interest in the 1,600 acres of Conejos County land here in question. Kilgore did not of course notify the plaintiffs or McLoy as to what he had done. They, however, became aware of it in due course. The note to the El Paso bank was not paid by Kilgore; indeed, it has not been paid even now. It has been renewed from time to time and interest payments have been made by either Kilgore or Given. In September, 1965, Given instituted foreclosure proceedings in Conejos County. On October 25, 1965, a sale was held and the property was bid in by Louis Given in the sum of $13,832.00.

There is considerable testimony as to whether Given was aware of the infirmities in Kilgore's title at the time that the deed of trust was given. In the deposition of Given he denied that he had any such knowledge. Given understood, however, that Kilgore was engaged in a land development scheme which involved this land (he did not appear at the trial). Given testified in his deposition that Kilgore had approached him in an effort to persuade him to participate in the land promotion. He stated that he turned Kilgore down. At the time Given said that there was no discussion of the state of Kilgore's title or the character of his ownership. At the trial Kilgore was asked whether he told Mr. Given how he had acquired this one-third interest in the tract of land. Kilgore stated: "I believe so. More or less, yes." The next day, however, he was asked by his attorney: "And I presume you did not tell him that under certain circumstances you had a duty to reconvey this land to Mr. Jaramillo?"

Answer: "I said yesterday that I didn't think I did, and I still feel that way. I don't think I did."

However, on re-cross examination Kilgore stated:

"BY MR. GREEN:

"Q Now, you requested Mr. Louis Given to advance money to replace Mr. Don McLoy in this transaction?

"A I asked Lou to advance that money and further monies as required to develop this property and sell it.

"Q Then you explained to him the nature of the property and that Mr. McLoy had some interest in it, then, didn't you?

"A Yes, I did.

"Q Did you tell him the details of how Mr. McLoy was interested, whenever you asked him to take over McLoy's interest?

"A What details do you mean? I just told him that Don had an interest and he wanted to get out.

"Q How much money did you ask Mr. Given for, for McLoy's interest?

"A I didn't specify an amount."

Kilgore also testified that he used "poetic license" in advising Given of his interest in the land. It would seem,

therefore, that Given understood that this land was held by Kilgore in connection with a land development deal and there is at least some evidence that Kilgore actually advised him of the details.

It should be emphasized that the quit claim deeds were never recorded in Conejos County. The deed of trust from Kilgore to Given was recorded, and it is because of this prior recording that we have a controversy.

There are two questions to be considered. The first of these is whether there was consideration or value for the deed of trust from Kilgore to Given; and secondly, whether the evidence shows actual knowledge on the part of Given or facts which would place a prudent man on notice regarding the infirmities in Kilgore's title.

### I.

The question whether the mortgage to Given was supported by a consideration and whether the pre-existing debt constituted value has been a troublesome one. Given had become a guarantor in consideration of the promise of Kilgore to pay him a percentage of the profits on the airport job. The project was a failure to the extent of $11,225.00. Given did not, however, pay the creditors. He kept Kilgore in the forefront requiring the latter to sign a note at the bank which he, Given, signed as a secondary party. So, therefore, Given has not to this day suffered. He has continued his status as a secondary party. At the same time he has firmed up his legal standing in connection with the Conejos County land by foreclosing his mortgage. The question is whether the mortgage is supported by a valid consideration and is valid, and secondly whether Given has paid value within the meaning of the Colorado recording statute.

The trust deed in question, although it involves Colorado land and names a Colorado Public Trustee, was executed in El Paso, Texas, and thus under Colorado law we must look to the law of Texas in order to determine its validity. Cockburn v. Kinsley, 25 Colo. App. 89, 135 P. 1112 (1913); Gossard v. Gossard, 10th Cir. 1945, 149 F.2d 111.

In Texas, a deed of trust to secure a debt is construed as a mortgage.[1] It is also held that the existence of a debt is indispensable to the existence of a mortgage.[2]

As a general principle, Texas recognizes the rule that a pre-existing liability is sufficient consideration to support a mortgage given as security therefor; a new consideration is not required at the time of making the mortgage. Quinn v. Dupree, 157 Tex. 441, 303 S.W.2d 769 (1957) Huey v. Brand, Tex.Civ.App., 92 S.W.2d 505 (1936). Furthermore, the Texas courts have recognized that a mortgagor's pre-existing liability to indemnify, which at most can be said only to create a potential "indebtedness,"[3] is sufficient consideration to support a mortgage. Thus, in Williams v. Silliman, 74 Tex. 626, 12 S.W. 534 (1889), the Texas Supreme Court held that a pre-existing liability to indemnify a surety against loss is a sufficient consideration for the subsequent execution of a mortgage to him. The plaintiff there sued the administrator of the estate of one Williams, charg-

1. McLane v. Paschal, 47 Tex. 365 (1875); Aggs v. Shackelford County, 85 Tex. 145, 19 S.W. 1085 (1892); Alliance Milling Co. v. Eaton, 86 Tex. 401, 25 S.W. 614, 24 L.R.A. 369 (1894); Thornton v. Goodman, Tex.Com.App., 216 S.W. 147 (1919).

2. Masterson v. Ginners' Mut. Underwriters Ass'n of Texas, Tex.Civ.App., 222 S.W. 263 (1920); Elder v. Wehmeyer, Tex. Civ.App., 155 S.W.2d 670 (1941); Norriss v. Patterson, Tex.Civ.App., 261 S.W.

2d 758 (1953); Wright v. Richcreek. Tex.Civ.App., 86 S.W.2d 478 (1935); First Baptist Church of Fort Worth v. Baptist Bible Seminary, 162 Tex. 441, 347 S.W.2d 587 (1961).

3. A "debt," of course, is commonly considered to be a fixed and certain obligation, as opposed to something payable only on a contingency. See 11 W. & P. Perm., p. 210.

ing that the deceased had executed his promissory note to one Bryan, which plaintiff had signed as surety. Subsequent to the execution of this note, and for the purpose of securing plaintiff against loss thereon, the deceased executed to plaintiff two mortgages upon real estate. Bryan sued on the note, and plaintiff was obliged to pay as surety. The court upheld plaintiff's right to foreclose on the mortgages over defendant's objection that they were given without consideration, each being of subsequent date to the note, and were mere voluntary instruments and void.[4]

In Willis v. Heath, 18 S.W. 801 (Tex. 1891), the court upheld the validity of a mortgage given by a member of an insolvent firm to his father to protect the latter as surety on certain notes given by the mortgagor to his copartner in payment for the copartner's interest in the business.

The rule laid down by these cases is summarized by one commentator as follows:

"The liability of a surety or guarantor for the debt of his principal before he has made any payment on account thereof is sufficient consideration for the execution of a mortgage or trust deed for his indemnity * * *"

Brandt on Suretyship, Vol. 1, § 239 (3rd ed.). See also, 36 Am.Jur. Mortgages, § 106.

Therefore, even though Given was never required to pay anything as guarantor on the performance bond, his potential obligation to do so places him in the position of creditor to Kilgore under Texas law. We must therefore conclude that the trust deed was not invalid for lack of consideration.

The remaining issue is whether Given is a bona fide purchaser or creditor for value. On this question, which involves the interpretation of the trust deed and the rights and liabilities of the parties under it, we must look to the law of Colorado, where the property is situated.[5] Choice of law on this point is crucial to the result. Texas follows the majority view that one who takes a mortgage or deed of trust to secure a past indebtedness, where the result of taking the mortgage or deed is not to extend the time of payment, is not a purchaser for value.[6] However, Colorado follows the minority of jurisdictions which recognize an antecedent debt to be value. Jerome v. Carbondale National Bank, 22 Colo. 37, 43 P. 215 (1895). The defendant in *Jerome* brought suit on an overdue promissory note against

---

4. The *Williams* case was cited in a dissenting opinion by Mr. Justice Whittaker in United States v. R. F. Ball Construction Company, 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958). The court, in a per curiam opinion, reversed the District and Circuit courts and held that a subcontractor's assignment to his performance-bond surety of all sums to become due under the subcontract, as security for any liability the surety might sustain under the bond and for any other indebtedness or liability of the subcontractor to the surety, remained inchoate and unperfected, and consequently the surety was not a "mortgagee" of the sums assigned within the meaning of § 3672(a) of the Internal Revenue Code of 1939, providing that a federal tax lien shall not be valid against any mortgagee until notice thereof has been filed by the collector. We do not view this case, in which the court was involved in interpreting a federal statute and defining the rights thereunder, as a derogation of the Williams decision with respect to purely state-created rights as are involved in this case.

5. Webster Drilling Co. v. Walker, 10th Cir. 1961, 286 F.2d 114; 117; 59 C.J.S. Mortgages § 151.

6. Spurlock v. Sullivan, 36 Tex. 511 (1872); Watts v. Corner, 8 Tex.Civ.App. 588, 27 S.W. 1087 (1894); Red River Nat. Bank in Clarksville v. Latimer, Tex.Civ.App., 110 S.W.2d 232 (1937); Jackson v. Waldstein, 10 Tex.Civ.App. 156, 30 S.W. 47 (1895); W. L. Moody & Co. v. Martin, Tex.Civ.App., 117 S.W. 1015 (1909); Brooks v. Asherton State Bank, Tex.Civ. App., 278 S.W. 473 (1926); Tom v. First Nat. Bank, Tex.Civ.App., 104 S.W.2d 130 (1937); Osborne, Mortgages §§ 187, 188 (1951).

one Cline, the record owner of certain lands in Arapahoe County, Colorado, and attached and levied upon these lands. Three years prior to the suit, Cline had given plaintiff a warranty deed for the same lands. This latter had not been recorded at the time of the attachment by the defendant. The satisfaction of the debt owed by Cline to the defendant at the time of the attachment and levy was held to be sufficient value to make the defendant a bona fide purchaser within the recording act.

> "Whatever the law may be in other jurisdictions, it is settled in this state that one who takes property in payment or security of a pre-existing debt is to be regarded as a purchaser for a valuable consideration."

43 P. at 216. See also, Conrad v. Davison, 84 Colo. 134, 268 P. 573 (1928); Hallett v. Alexander, 50 Colo. 37, 114 P. 490, 34 L.R.A.,N.S., 328 (1911); Knox v. McFarran, 4 Colo. 586 (1879). Under these cases, Kilgore's obligation to indemnify Given is a sufficient consideration to make the latter a bona fide purchaser or creditor under the Colorado recording statute.

It is to be noted that the Colorado recording statute, supra, applies to "any class of persons with any kind of rights." We view this to cover Given whether he be considered a purchaser or merely a creditor. Indeed, even under the prior, more narrowly worded, Colorado statute,[7] judgment creditors, Wixon v. Wixon, 76 Colo. 392, 232 P. 665 (1925), execution creditors, Hallett v. Alexander, supra, and attaching creditors, Jerome v. Carbondale National Bank, supra, have been held protected. See Osborne, Mortgages § 210; Storke & Sears, Colorado Security Law § 18 (1955).

Therefore, contrary to plaintiffs' contention the deed of trust is not invalid for lack of consideration and under applicable law Given was a purchaser for value entitled to protection under the Colorado recording statute.

## II.

The remaining issue is whether Given had actual notice of infirmities in Kilgore's title so as to subordinate his rights to those of the Jaramillos.

The Colorado recording statute provides that an unrecorded deed does not take effect as to any person with any kind of rights, except those having notice thereof, until filed for record. 1963 C.R.S. § 118–6–9. Notice may be constructive or implied from the fact that there existed means of knowledge which the party did not use. Connecticut Fire Ins. Co. v. Colorado Leasing, Min. & Mill. Co., 50 Colo. 424, 116 P. 154 (1911). It is a well-settled general rule, in determining whether a purchaser had notice of outstanding equities or unrecorded interests so as to preclude him from being entitled to protection as a bona fide purchaser, that if he has knowledge of circumstances which, in the exercise of common reason and prudence, ought to put a man upon particular inquiry, he will be presumed to have made that inquiry, and will be charged with notice of every fact which would in all probability have been revealed had such investigation been undertaken. Foster v. Cramer, 19 Colo. 405, 35 P. 747 (1894); Runyan v. Snyder, 45 Colo. 156, 100 P. 420 (1909); 55 Am.Jur., Vendor & Purchaser § 697; 59 C.J.S. Mortgages § 237.

The circumstances surrounding acquisition, while they do not render the trust deed invalid for want of considera-

---

7. "All deeds, conveyances, agreements in writing of, or affecting title to real estate or any interest therein, and powers of attorney for the conveyance of any real estate or any interest therein, may be recorded in the office of the recorder of the county wherein such real estate is situate, and from and after the filing thereof for record in such office and not before, such deeds, bonds, and agreements in writing shall take effect as to subsequent bona fide purchasers and encumbrancers by mortgage, judgment or otherwise not having notice thereof." 1 Mills Ann.Stat. § 446.

tion, are pertinent to an appraisal of Given's bona fides. According to Given's deposition, he was told by Kilgore that the latter was engaged in a land promotion in Colorado. Given refused to become involved. Kilgore hoped when he gave the mortgage to sell enough of the five-acre tracts to pay off the mortgage debt. Exactly what Kilgore told Given about the Colorado land and the state of his title we will never know for sure. Kilgore's testimony is somewhat erratic on this. Once he said that he used "poetic license," and once he indicated that he had revealed the details to Given. We do know that Given was receiving something in the nature of a gift. He was anxious to obtain anything which was available and this undivided one-third interest in grazing land was the only tangible asset in sight. Consequently Given did not look a gift horse in the mouth, so to speak. According to him he closed his eyes and left the entire matter to his lawyer. While the evidence does not establish that Given had actual knowledge of the infirmities in Kilgore's title, it does reveal that Given paid nothing in fact and had knowledge of circumstances which in the exercise of common prudence ought to have put him upon inquiry. Thus Given is presumed to have made the inquiry and is charged with the knowledge which minimal inquiry would have revealed.

It would be grossly inequitable to allow Given to prevail in the circumstances of the case. Accordingly, we conclude that he does not have the standing of a bona fide purchaser in relationship to the plaintiffs. Consequently, plaintiffs are entitled to have their title quieted as against Given.

The damage claimed against the defendant Kilgore need not be considered. The claims against Given and Kilgore are alternative. Since we have concluded that the Jaramillos are entitled to prevail as against Given it follows that they suffered no *damages* in respect to their claim against Kilgore. It is clear, nevertheless, that Kilgore committed a constructive fraud against the Jaramillos arising from his unauthorized conveyance. Indeed, it was Kilgore's culpability which set the force in motion. Presumably, however, Given is in a position to bring Kilgore to book.

It is therefore ordered that plaintiffs have judgment upholding their title against Given and his recorded deed of trust. Counsel for plaintiffs is directed to submit an appropriate decree approved as to form by counsel for Given.